THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKY KNIGHT *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 82—2810, 82—2872 cons.

Opinion filed December 12, 1985.

*This opinion was adopted as the opinion of the court prior to the retirement of Mr. Justice Mejda.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant Ricky Knight.

Jack I. Rodgon, of Chicago, for appellant Patrick Hampton.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and David A. Cuomo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

In simultaneous trials conducted before the same judge, but with different juries, defendants, Ricky Knight and Patrick Hampton, were convicted of deviate sexual assault, attempted rape, robbery, and aggravated battery. (A third defendant, Ronald Mallory, was acquitted by a third jury.) Defendant Knight was sentenced to 60 years for deviate sexual assault, to be served consecutive to the following concurrent terms: 30 years for two counts of attempted rape, seven years for three counts of robbery, and five years for three counts of aggravated battery. Defendant Hampton received concurrent sentences of 60 years for deviate sexual assault, 15 years for attempted rape, seven years for three counts of. robbery, and five years for three counts of aggravated battery.

In separate appeals, which we have consolidated for purposes of this opinion, defendants have raised the following arguments. Defendant Hampton contends that (1) his warrantless arrest should have been quashed and the resulting identification testimony suppressed, and (2) his 60-year sentence for deviate sexual assault was excessive. Defendant Knight contends that (1) he was prejudiced when the trial court failed to compel the complaining witnesses' civil attorney to produce records of statements made to the attorney concerning the incident in question; (2) it was error to require him to participate in a simultaneous triple-jury trial with his severed codefendants; (3) his convictions for attempted rape must be reversed be-

cause the indictments failed to allege any act constituting a substantial step toward commission of a rape; (4) the attempted rape convictions must be reversed because the State failed to prove that he intended to rape anyone or that he took any substantial step toward such an act; (5) it was error to impose an extended-term sentence for the less serious offense of attempted rape; (6) the consecutive sentence imposed was improper because the evidence failed to support a finding that he inflicted severe bodily injury; and (7) the consecutive sentence imposed constituted an abuse of discretion.

We affirm, as modified.

The evidence presented by the State established the following pertinent facts. On the evening of December 29, 1981, Hugo Novales, D.M., and M.N. were attending a rock concert at the Amphitheater in Chicago. The three were sitting near the stage late in the concert when a group of 40 to 50 men began moving up the aisle toward the stage, chanting, "Third World Disciple Nation" and making hand signals. Both defendants were in this group. Defendant Knight was directing the other men to various positions as they moved down the aisle.

When Hugo, D.M., and M.N. entered the aisle, attempting to leave, the men began to kick and punch them. As Hugo held onto D.M. in an effort to protect her, his clothes were stripped from him, along with his wallet and jewelry. D.M.'s clothes were also ripped from her body, along with some gold jewelry. Defendant Knight struck Hugo and D.M. with a wooden chair, striking with such force that the chair was splintered. He then struck Hugo on the head with a metal chair, knocking him to the ground with D.M.

D.M. was held down on the ground. As she screamed, some of the men fondled her breasts, and others, including defendant Hampton, put their fingers in her vagina. A number of the men around D.M., including defendant Knight, had their penises exposed. Knight forced his penis into D.M.'s mouth. Then Knight tried to spread her legs as defendant Hampton attempted to insert an unidentified cold, hard object into her vagina. Hugo and D.M. were rescued from these men and taken to a first-aid area behind the stage. D.M. was then taken to the hospital. She had sustained a vaginal wound requiring stitches, scars on her breast, and a bladder infection.

M.N. was also attacked in the aisle. Defendant Knight tried to strike her with a chair. She was pulled by her hair toward the stage and was kicked and hit as people attempted to disrobe her. A necklace was snatched from her neck.

During the attack, defendant Hampton ripped off M.N.'s pants

and attempted to put his hand in her vagina. M.N. was then knocked to the floor, losing consciousness. When she regained consciousness, she ran to safety as defendant Knight shouted, "Get her. Get her."

We first consider defendant Hampton's contention that his warrantless arrest, which he contended took place in his home, should have been quashed.

At the hearing on Hampton's motion to quash, Detective Thomas Ptak testified that on December 31, between 4:20 p.m. and 5 p.m., he first learned of the identities and addresses of the defendants from Keith Powell, an eyewitness. Powell informed him that defendants were gang members; Powell, at approximately 5:15 p.m. in a photo array, identified defendant Knight as the leader of the gang. The police went to defendant Hampton's building, where they arrested three other men suspected of involvement in the attack. At about 7 p.m., Ptak and other officers knocked on defendant's door. A man who identified himself as defendant's father came to the door. When the police asked to speak to Hampton, the man summoned him and told him to go outside (into the hall of the building) to speak to the officers. He was arrested in the hall without a warrant.

Defendant Hampton testified that his father could not have responded to the knock on the door because he had died earlier that year. Defendant's brother was the one who answered the door; the police came into the apartment; and defendant was arrested inside the apartment.

The court declined to resolve the credibility question resulting from this conflicting testimony, finding that in any event exigent circumstances justified a warrantless arrest in Hampton's home.

■ Absent exigent circumstances, the police may not effectuate a warrantless, nonconsensual entry of a private residence to make an arrest. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 639, 100 S. Ct. 1371; *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543.) Among the factors which may be considered by the court in determining the exigency of an arrest are (1) whether a grave offense, particularly a violent crime, is involved; (2) whether there is a clear showing of probable cause; (3) the existence of a strong reason to believe the suspect is present; (4) the likelihood of escape absent a prompt arrest; and (5) whether the police entry was peaceable. (*People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369.) These and other factors cited by the courts, however, are only guidelines, with the overall consideration being the reasonableness of the police

action in light of what they knew. (*People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369, *cert. denied sub nom. Williams v. Illinois* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; *People v. Cobb* (1983), 97 Ill. 2d 465, 455 N.E.2d 31.

In this case, the police knew that a brutal and violent attack in plain view of an auditorium full of people had occurred one day earlier. Late in the following afternoon, the police first obtained a positive identification of Hampton as one of the perpetrators. Less than two hours after also learning his address, the police went to his building. In that same building, they had just arrested a number of defendant Hampton's alleged accomplices when, according to Hampton, they arrested him in his apartment. These factors—the brutality of the crime, prompt police action after learning Hampton's identity and address, the danger of flight after commission of such a crime in plain view, and the arrest of accomplices in the same building—all support the trial court's determination that the police acted reasonably under the exigencies of the circumstances confronting them. Accordingly, we find no error in the denial of defendant Hampton's motion to quash his arrest.

■■ We also find no basis for modification of defendant Hampton's 60-year extended-term sentence for deviate sexual assault. On appeal, Hampton contends that what he concedes to be the "horror" of his crime should be mitigated by the absence of any prior criminal activity in his record.

As was stated in *People v. Gaines* (1981), 88 Ill. 2d 342, 382, 430 N.E.2d 1046, 1066, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285, in the context of the imposition of the death penalty:

> "The possibility of an individual offender's rehabilitation is not the sole factor to be considered in sentencing, and the court is also to consider whether the seriousness of the offense and the protection of the interests of society call for a sentence of severity."

In sentencing defendant Hampton, the trial court specifically noted that it was taking into account his lack of any prior criminal adult record. However, the court also took into consideration what it characterized as the "egregiously cruel, *** brutal, heinous" activity of the defendant. Defendant Hampton does not contest the fact that the evidence supported a finding that "exceptionally brutal or heinous behavior indicative of wanton cruelty" was present here, thus supporting an extended-term sentence. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(2).) We find no abuse of discretion in the sen-

tence imposed on defendant Hampton by the trial court, and, consequently, we may not disturb that sentence on review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

We next consider defendant Knight's contention that the trial court erred when it did not compel the complaining witnesses' civil attorney to produce certain of their statements prior to the start of his trial.

Hugo, D.M., and M.N. had retained a lawyer to prosecute a civil action arising out of the attack on them at the concert. That attorney, Milton C. Jacobson, had conversations with these clients concerning the attack. Jacobson tape-recorded and made handwritten notes of these interviews.

Prior to commencement of the instant trials, defendant Knight filed a discovery motion seeking, *inter alia,* any recorded statements made by the State's witnesses. The State caused a *subpoena duces tecum* to be issued against Jacobson, directing him to produce these records. Jacobson moved to quash this subpoena on the basis of the attorney-client privilege. The trial court ruled that this privilege must give way to the defendant's constitutional rights and so ordered Jacobson to produce the records. Jacobson persisted in this refusal and the court held him in contempt of court, staying enforcement pending appeal of that order. The court also denied defendant Knight's motion to continue his trial pending the resolution of Jacobson's appeal, as well as defendant's motion to bar the testimony of those witnesses or to hold them in contempt for asserting their attorney-client privilege.

Defendant Knight apparently contends that the trial court should have taken further steps to obtain these statements for his possible use of them as impeachment. He contends that this failure isolated his sixth amendment right to confront his accusers. However, on appeal of Jacobson's contempt citation, this court held that to compel a civil attorney to disclose privileged communications in a criminal proceeding would defeat the basic policy underlying the privilege, that of encouraging full and frank consultation between a client and his attorney by removing any fear of compelled disclosure of that information. (*People v. Jacobson* (1983), 119 Ill. App. 3d 103, 456 N.E.2d 218.) The court also noted that the information sought was not even in the possession of the State. For these reasons, the court reversed the judgment of contempt.

Defendant Knight cites *People v. Dace* (1983), 114 Ill. App. 3d 908, 449 N.E.2d 1031, *aff'd* (1984), 104 Ill. 2d 96, 470 N.E.2d 993, in which it was held that a State witness' statutory right to confi-

dentiality of records concerning a prior involuntary commitment must yield to a criminal defendant's sixth amendment right to confrontation, at least to the extent of requiring an *in camera* hearing at which the court would determine if any of the records were impeaching. But, in *Dace* it was already established that the witness had been involuntarily committed, thus establishing some threshold basis for a belief that such records would be impeaching. Here, the defendant can only speculate that in their statements to their civil attorney the State's witnesses contradicted or omitted some material aspect of their subsequent trial testimony. There is, of course, nothing in the record to support this.

In addition, the privilege at issue here, arising from the relationship of attorney and client, is one which is deemed to promote the judicial process itself. (*Dickerson v. Dickerson* (1926), 322 Ill. 492, 153 N.E. 740; McCormick, Evidence sec. 87, at 175-76 (2d ed 1972).) It is thus distinguishable from the privileges deemed in certain circumstances to be secondary to a defendant's right of confrontation in the case cited by defendant Knight. (*Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (confidentiality of juvenile records); *Salazar v. State* (Alas. 1976), 559 P.2d 66 (marital privilege); *State v. Hembd* (1975), 305 Minn. 120, 232 N.W.2d 872 (doctor-patient privilege).) For these reasons, we find no reversible error in the trial court's failure to postpone defendant Knight's trial or to take further steps to obtain the records of the statements made by the State's witnesses to their civil attorney.

■ We find no merit to defendant Knight's contention that it was error to require him to be tried in a simultaneous triple-jury trial before the same judge. Such trials are not *per se* violative of a defendant's rights (*People v. Ruiz* (1983), 94 Ill. 2d 245, 447 N.E.2d 148, *cert. denied* (1983), 462 U.S. 1112, 77 L. Ed. 2d 1341, 103 S. Ct. 2465), and defendant Knight has failed to allege any specific prejudice to him arising from the use of this procedure.

■ Defendant Knight attacks his convictions for attempted rape on two grounds. He first contends that the two pertinent indictments failed to allege any act constituting a substantial step toward the commission of the rapes.

The indictments alleged that defendant "with the intent to commit the offense of rape, attempted to compel [D.M. and M.N.] *** to submit to an act of sexual intercourse, by force and against [their] will, in violation of Chapter 38, Section 8—4, of the Illinois Revised Statutes ***." Our supreme court has held that an indictment containing identical language suffices to adequately charge a

defendant with attempted rape. (*People v. Bonner* (1967), 37 Ill. 2d 553, 229 N.E.2d 527, *cert. denied* (1968), 392 U.S. 910, 20 L. Ed. 2d 1368, 88 S. Ct. 2067.) Defendant cites *People v. Mack* (1974), 24 Ill. App. 3d 455, 321 N.E.2d 446, a case in which a similarly worded indictment was held to be defective. However, in *Mack*, which did not cite *Bonner*, has been construed as being grounded in an anomalous factual situation and has been disapproved to the extent it conflicts with *Bonner. People v. Testa* (1983), 114 Ill. App. 3d 695, 449 N.E.2d 164.

■ Defendant Knight also contends that the State's evidence failed to establish any intent on his part to commit rape or any substantial step toward commission of that crime with respect to either D.M. or M.N.

The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances. (*People v. Almond* (1975), 31 Ill. App. 3d 374, 333 N.E.2d 236.) In *Almond*, the court held that attempted rape was established by evidence that the defendant knocked the complainant to the ground, choked her, pulled her in the direction of an alley, and attempted to disrobe her. Here, defendant Knight and his companion forced both women to the ground and stripped them of all or part of their clothing. D.M.'s breasts were fondled and fingers were placed in her vagina by some of the men. Defendant Knight forced his penis into D.M.'s mouth and then spread her legs as she lay naked on the ground, permitting defendant Hampton to insert an object in her vagina. M.N.'s pants were ripped off by defendant Hampton, who then attempted to put his hand in her vagina. These acts, for which it is undisputed defendant Knight was accountable, establish without any doubt that both women were the objects of attempted rape.

■ The State concedes that under the authority of *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569, it was error to sentence defendant Knight to an extended term for attempted rape, a Class 1 felony, when he had been convicted of a greater offense, the Class X felony of deviate sexual assault. Accordingly, we reduce defendant Knight's concurrent sentences of 30 years for attempted rape to 15 years, the maximum permissible without imposition of an extended term.

■ Finally, defendant Knight attacks his consecutive sentence on two grounds. He first contends that it was not established that he inflicted severe bodily injury, a statutory prerequisite to imposition of consecutive sentences for offenses committed as part of a single course of conduct with no substantial change in the criminal

objective. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(a).) As a result of the attack on D.M. by defendant Knight and his companions, she suffered a laceration to her vagina which required stitches, and scars on her breasts. Manifestly these injuries were sufficient for the trial court in its discretion to find that severe bodily injury had been inflicted. *People v. Townes* (1981), 94 Ill. App. 3d 850, 419 N.E.2d 604, *aff'd* (1982), 91 Ill. 2d 32, 435 N.E.2d 103, *cert. denied* (1982), 459 U.S. 878, 74 L. Ed. 2d 143, 103 S. Ct. 174.

▇ Nor do we find merit to defendant Knight's contention that it was an abuse of discretion for the court to sentence him to a total of 90 years (now 75 years, as we have reduced one sentence) when defendant Hampton received a 60-year sentence. Disparate sentences may be supported by greater relative participation in an offense or by lesser rehabilitative potential as evidenced by a more serious criminal record. The evidence at trial established that it was defendant Knight who led and coordinated this attack. When M.N. managed to escape, it was Knight who ordered his accomplice to "get" her. Defendant Knight, in contrast to Hampton's lack of any adult criminal record, had prior convictions for theft, burglary, and robbery. Indeed, he was on probation for the robbery conviction at the time he committed these offenses. Given these considerations, we cannot find that it was an abuse of discretion for the trial court to impose on defendant Knight a sentence 15 years longer than that imposed on defendant Hampton.

For the foregoing reasons, defendant Knight's concurrent 30-year sentences for attempted rape are reduced to 15 years. In all other respects the judgment and sentences of the trial court as to both defendants are affirmed.

Affirmed, as modified.

JIGANTI, P.J., and LINN, J., concur.