THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LESLIE FOGGY, Defendant-Appellant.

Third District   No. 3—86—0213

Opinion filed November 17, 1986.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Robert P. Arnold, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant appeals from his convictions of aggravated criminal sexual assault and unlawful restraint. He raises two issues for our consideration: (1) whether the privilege afforded confidential communications between rape victims and rape crisis counselors by section 8—802.1 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 8—802.1) unconstitutionally impairs a defendant's sixth and fourteenth amendment rights to due process and to confront witnesses against him; and (2) whether a misstatement of law in the prosecutor's closing argument deprived defendant of a fair trial.

Since the facts underlying defendant's convictions are not disputed on appeal, they will not be repeated here except as needed to explain our resolution of the foregoing issues.

The victim in this case, Sheila Rafferty, complained that the defendant had abducted her from in front of her home in Rock Island during the early morning hours of July 18, 1985. For over an

hour, defendant drove around the area with Rafferty locked in his car. He eventually stopped in a park, where he performed an act of sexual intercourse, and then allowed her to leave near a 7-11 store. Rafferty told the 7-11 store clerk to write down the letters and numbers of defendant's license plate. She then telephoned the police to report the incident. A complaint was filed the same day and a warrant for defendant's arrest was issued and executed.

Following a preliminary hearing and the filing of formal charges, defendant served a subpoena *duces tecum* on the Quad City Rape/Sexual Assault Counseling Program seeking discovery of communications between Sheila Rafferty and rape crisis counselor Joni Dittmer. The subpoena was resisted with motions to quash filed by both Dittmer and the prosecutor. The motions were heard and allowed by the court on grounds that the confidential communications were absolutely privileged pursuant to section 8—802.1 of the Code of Civil Procedure, that Rafferty had not waived the statutory privilege, and that the legislation at issue was not unconstitutional.

In this appeal, defendant renews his challenge to the constitutionality of the absolute privilege of confidentiality granted by section 8—802.1. Defendant contends that the privilege afforded by this section cannot withstand constitutional analysis under the sixth and the fourteenth amendments since it precludes even an *in camera* hearing for the purpose of determining whether relevant statements may have been made by the victim which would be exculpatory of defendant or could otherwise impeach the victim's testimony. The issue presented is one of first impression in Illinois, but our attention is directed to precedent in two foreign jurisdictions in which the courts have considered similar challenges to the privileges afforded confidential communications between rape victims and their counselors by statutory enactments. (*In re Robert H.* (1986), 199 Conn. 693, 509 A.2d 475; *People v. District Court* (Colo. 1986), 719 P.2d 722.) The courts in these cases reached what appear to be irreconcilable results. Before considering the rationales applied by them, however, we deem it appropriate to review the history of our own legislation and a few precedential opinions relating to analogous privileges.

As originally enacted effective July 13, 1982, the statutory privilege afforded by section 8—802.1(c) provided in its second paragraph for conditional confidentiality. The subsection as originally adopted reads as follows:

> "Where any victim or alleged victim of rape, deviate sexual assault, incest, or aggravated incest makes a statement relat-

ing to the crime or its circumstances during the course of therapy or consultation to any counselor, employee, or volunteer of a rape crisis organization, the statement or contents thereof shall not be disclosed by the organization or any of its personnel unless the maker of the statement consents in writing or unless otherwise pursuant to this Section.

If in any judicial proceeding, a party alleges that such statements are necessary to the determination of any issue before the court and written consent has not been given, the party may ask the court to consider the relevance and admissibility of the statements. In such a case, the court shall hold a hearing in camera on the relevance of the statements. If it finds them relevant and admissible to the issue, it shall order them disclosed." Pub. Act 82—783, article III, section 43, eff. July 13, 1982.

The stated purpose of the legislation appears in subsection (a):

"(a) Purpose. This Section is intended to protect victims of rape, deviate sexual assault, and incest from public disclosure of statements they make in confidence to counselors of organizations established to help them. Because of the fear and stigma that often results from those crimes, many victims hesitate to seek help even where it is available at no cost to them. As a result they not only fail to receive needed medical care and emergency counseling, but may lack the psychological support necessary to report the crime and aid police in preventing future crimes." Pub. Act 82—783, article III, section 43(a), eff. July 13, 1982.

When subsection (c) was amended by Public Act No. 83—678, effective July 1, 1984, the second paragraph was eliminated and a penalty provision was added, thereby rendering the privilege absolute and disclosure without consent a crime.

"(c) Confidentiality. No rape crisis counselor shall disclose any confidential communication or be examined as a witness in any civil or criminal proceeding as to any confidential communication without the consent of the victim.

(d) Any rape crisis counselor who knowingly discloses any confidential communication in violation of this Act commits a Class C misdemeanor." Pub. Act 83—678, article III, secs. 43(c), (d), eff. July 13, 1982.

Another comprehensive package of bills was passed by the General Assembly in 1984 repealing certain sex offenses from article 11 of the Criminal Code of 1961, "Sex Offenses," and redefining and

redrafting them under article 12, "Bodily Harm." (Pub. Act 83—1067, eff. July 1, 1984.) When this legislation was applied to the privilege granted under the Code of Civil Procedure, it ignored the substantive changes approved by Public Act No. 83—678. Consequently, it was not until passage of the first 83rd General Assembly combining revisory act (Pub. Act 83—1362, art. II, section 109) that the matter was resolved so as to incorporate the language of Public Act No. 83—1067 into the substantive law passed by Public Act No. 83—678. Except for modifications in the language of subsection (a) to accommodate the passage of Public Act No. 83—1067, the public policy statement contained in section 8—802.1(a) remained substantially unchanged during the metamorphosis of the privilege from conditional to an absolute privilege.

■ Against this historical backdrop, we turn to relevant case law. By virtue of the sixth and fourteenth amendments, a defendant in a criminal prosecution enjoys a fundamental right to confront adverse witnesses, to meet them face-to-face, and to cross-examine them. The defendant's right to cross-examine, however, is not absolute and must at times "bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi* (1973), 410 U.S. 284, 295, 35 L. Ed. 2d 297, 309, 93 S. Ct. 1038, 1046.

In *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, the Supreme Court considered a defendant's sixth and fourteenth amendment challenge to Alaska's statutory policy of protecting the anonymity of juvenile offenders. The rule there in question provided that adjudications, orders, and dispositions in juvenile cases were inadmissible as evidence in nonjuvenile proceedings except as deemed necessary by the court for purposes of presentencing in appropriate criminal cases. Davis sought to expose the possible bias of the State's key witness by examining his probationary status. Such inquiry, together with reasonable inferences, if believed by the jury, could have seriously damaged the State's case against Davis. The majority in *Davis* ruled that in this setting a criminal defendant's sixth and fourteenth amendment right of confrontation—*i.e.*, the right to conduct an effective cross-examination and to thereby expose the State's witness' possible bias and prejudice—was paramount to the State's policy of protecting the juvenile offender from embarrassment and/or a blemished reputation that could result from the disclosure of his juvenile record at trial. 415 U.S. 308, 319, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1111-12.

Subsequently, this court ruled in *People v. Dace* (1983), 114 Ill. App. 3d 908, 449 N.E.2d 1031, that mental health records of a

State's witness, protected by the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1981, ch. 91½, par. 801 *et seq.*), must be produced upon invocation of the statutory privilege for an *in camera* hearing to determine what information contained therein is relevant or material to the impeachment of the witness. (114 Ill. App. 3d 908, 913, 449 N.E.2d 1031, 1035.) The use of such information in court, this court cautioned, remained subject to the trial court's discretion "with appropriate regard to a defendant's sixth and fourteenth amendment rights."

*Dace* proceeded to the Illinois Supreme Court, where the appellate court's disposition was affirmed. (*People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993.) However, the court's discussion of the issue was limited to the court's comment that "under the circumstances shown by the evidence, the refusal to permit the discovery [of the mental health history of the State's witness] was reversible error." 104 Ill. 2d 96, 103, 470 N.E.2d 993, 996.

Then, in *People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261, the supreme court was asked to determine whether the rule set forth in *Dace*, requiring production of a State's witness' mental health records for an *in camera* hearing, was confined to the situation in *Dace* wherein: (1) the witness' testimony was "exclusively determinative" of defendant's guilt; (2) there was no corroborative circumstantial evidence of the defendant's guilt; and (3) the jury was not presented with other evidence of the witness' mental health problems. None of these factors was present in *Friesland*. Lacking the three factors, and because "nothing tended to establish that the records sought would be either relevant or helpful to defendant's case," the appellate court in *Friesland* had found no error in the trial court's denial of defendant's motion for production of the mental health records. *People v. Friesland* (1985), 130 Ill. App. 3d 595, 597, 474 N.E.2d 865, 867.

On appeal to the supreme court, however, the substantive issue was not reached. The court noted that defendant had failed to include the issue in his written post-trial motion and ruled that the issue had been waived for the court's purposes on review. The court further rejected defendant's argument that the matter required invocation of the plain-error doctrine.

> "[I]t is speculative whether what is contained in this witness' privileged mental health records [citation] *may* be helpful to defendant's case (especially in light of the fact that the jury already heard evidence of the witness' mental health problems); and (2) *** we do not believe that the evidence in this

case is closely balanced or that the alleged error is of such a magnitude that the defendant was denied a fair trial." (Emphasis in original.) *People v. Friesland* (1985), 109 Ill. 2d 369, 375-76, 488 N.E.2d 261, 263.

More recently our appellate court considered whether a defendant's constitutional right of confrontation outweighed a State witness' statutory privilege of confidential communications recorded by his attorney. (*People v. Knight* (1985), 139 Ill. App. 3d 188, 486 N.E.2d 1356.) The appellate court rejected defendant's argument that production of the subpoenaed statements was required by *Dace* for an *in camera* review. The court held that the rule of *Dace* was inapplicable because in *Dace* the fact that the witness had been involuntarily committed to a mental health facility was already a matter of record, thereby establishing "some threshold basis for a belief that such records would be impeaching." (139 Ill. App. 3d 188, 195, 486 N.E.2d 1356, 1361.) By contrast, in *Knight* the defendant could "only speculate" that the State's witnesses had made statements to their civil attorney which "contradicted or omitted some material aspect of their subsequent trial testimony."

The *Knight* court further distinguished the attorney/client privilege from those considered by *Davis* and its progeny, finding that, unlike those privileges deemed to be secondary to a defendant's right of confrontation (juvenile records, the marital privilege and the doctor/patient privilege), the attorney/client privilege "is deemed to promote the judicial process itself." (139 Ill. App. 3d 188, 195, 486 N.E.2d 1356, 1361.)

Lastly, we have carefully analyzed the foreign decisions cited to us by the parties to this appeal. In *In re Robert H.* (1986), 199 Conn. 693, 509 A.2d 475, the statutory privilege at issue was, as in the case before us today, specifically designed to include protection of confidential communications between rape crisis counselors and sexual assault victims. In the trial court, the privilege was found applicable and defendant's subpoena *duces tecum* for discovery of the counselor's records was quashed pursuant to a motion filed by the attorney for the rape crisis center. On appeal to the Connecticut Supreme Court, the order quashing the subpoena was reversed. The court reviewed *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, and two State criminal cases (*State v. Bruno* (1985), 197 Conn. 326, 497 A.2d 758, and *State v. Esposito* (1984), 192 Conn. 166, 471 A.2d 949) in which the defendants' right of confrontation was found to outweigh the State's witness' interest in the confidentiality of psychiatric records. The court adopted the proce-

dure formulated in *Bruno* and *Esposito*. Under *Bruno* and *Esposito*, the proper procedure applicable to discovery of such records required a threshold showing by the defense establishing "that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken." *In re Robert H.* (1986), 199 Conn. 693, 708, 509 A.2d 475, 484, quoting *State v. Esposito* (1984), 192 Conn. 166, 471 A.2d 949.

In *Robert H.*, the juvenile respondents made an offer of proof that the rape crisis center's records would show that there were "substantial inconsistencies" in the victim's testimony and that she had been "coached in her testimony." (*In re Robert H.* (1986), 199 Conn. 693, 699, 509 A.2d 475, 480.) Accordingly, the trial court was directed on remand to conduct an *in camera* review of the victim's records if the victim gave her consent, or, in the absence of such consent, to strike her testimony as required by to the *Bruno-Esposito* procedure.

As aforesaid, under a substantially similar setting to *Robert H.*, the constitutional question was resolved with the opposite result in Colorado. (*People v. District Court* (Colo. 1986), 719 P.2d 722.) In that case, defendant served a subpoena *duces tecum* upon the rape victim's therapist, who worked at a counseling center known as Ending Violence Effectively. The prosecutor resisted production of the victim's treatment records, invoking the State's psychologist/patient privilege on behalf of the victim. The trial court found that the statutory privilege applied, and that the privilege had not been waived by the victim, but that the defendant's constitutional right of confrontation was paramount to the statutory privilege. (See *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105.) The trial court therefore ordered production of the records for an *in camera* inspection to determine whether any information was relevant to the substantive issues or the credibility of the complaining witness.

■ An interlocutory appeal was advanced by the prosecution to prohibit the enforcement of that order. The Colorado Supreme Court reviewed the purpose of the statute and concluded that the absolute privilege as granted by the legislature was constitutional. In granting the relief sought by the prosecution, the court expressly rejected applying a balancing test. The court stated:

"As we have noted, the right of a party to cross-examine adverse witnesses must in some circumstances bow to other considerations. There is a strong public policy interest in en-

couraging victims of sexual assaults to obtain meaningful psychotherapy. The defendant's constitutional right to confrontation is not so pervasive as to place sexual assault victims in the untenable position of requiring them to choose whether to testify against an assailant or retain the statutory right of confidentiality in post-assault psychotherapy records. Accordingly, we conclude that where, as here, the victim has not waived the [statutory] privilege ***, the defendant is not entitled to examine the victim's post-assault psychotherapy records or to have the trial court review such records *in camera* on the basis that the records might possibly reveal statements of fact that differ from the anticipated testimony of the victim at trial." *People v. District Court* (Colo. 1986), 719 P.2d 722, 727.

Having analyzed the history of the statutory privilege before us, having given due consideration to the express legislative purpose and the strong public policy underlying the enactment of the absolute privilege, and having considered the well-reasoned, albeit diverse, expressions of our sister jurisdictions and our own legal precedent in related settings, we conclude that the defendant's constitutional right of confrontation in this case must yield to the victim's privilege.

■ In this case, as in *Knight* and *District Court*, defendant has presented no "threshold basis" to believe that anything in the confidential records would be impeaching of the victim's testimony. Defendant's mere speculation of the possibility of turning up some information that he could use certainly detracts from his position on appeal, but we do not find this factor conclusive. More importantly, we believe that the nature of the privilege, particularly considering the explicit statement of legislative intent embodying a strong public policy favoring an absolute privilege, requires the result we reach today.

The legislative intent as stated in section 8—802.1 could not be clearer. The privilege before us was not enacted merely to protect the witness from public embarrassment or loss of reputation. Rather, it was enacted with the express purpose of promoting the prosecution of sex offenders. In our opinion, the confidential relationship required in the counselor/victim setting is akin to that of attorney/client. The relationship and open communication promoted by the privilege of confidentiality represents in many cases the first step taken by the victim in the legal pursuit of justice. As the testimonies of Joni Dittmer and Belinda Tyler-Jamison (Rafferty's counselor and

the rape crisis center's director, respectively) demonstrate, among the counselor's primary services is support of the victim in pursuing the prosecution of the perpetrator. The counselor coordinates interviews between the victim and the prosecutor and accompanies the victim, as needed, to the State's Attorney's office and to court. All services are provided with the assurance that all communication will be kept confidential unless the victim's consent is given for its release. The privilege, thus, promotes the judicial process in much the same manner as the attorney/client privilege. *People v. Knight* (1985), 139 Ill. App. 3d 188, 486 N.E.2d 1356.

We believe it particularly significant that after the original enactment of the privilege, the legislature amended the statute to eliminate *in camera* disclosure. The amendment converted the conditional privilege as originally drafted into an absolute privilege with a concomitant penalty provision for breach of confidentiality. By these measures, the legislature intended to promote the strong public policy favoring the pursuit of justice on behalf of rape victims.

In sum, we hold that the absolute privilege of confidentiality granted by section 8—802.1 is not unconstitutional on its face or as applied in this case.

■ Defendant raises a second issue on appeal—whether the prosecutor's misstatement of the law in closing argument deprived defendant of a fair trial. We find that this issue has been waived because no objection was made at trial or in defendant's post-trial motion. Further, we deem the matter not appropriate for consideration under the plain-error doctrine, since we do not find the evidence of defendant's guilt closely balanced; and, in any event, we do not find that the argument defendant complains of here, viewed in the context of the prosecutor's entire argument, was so egregious as to deprive defendant of a fair trial.

For the reasons stated, we affirm the judgment of the circuit court of Rock Island County.

Affirmed.

SCOTT, P.J., and HEIPLE, J., concur.