THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE KING, Defendant-Appellant.

First District (3rd Division)   No. 85—1364

Opinion filed June 10, 1987.—Rehearing denied August 12, 1987.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan Disis, and Cary Davis, Assistant State's Attorney, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Following a jury trial, defendant Eddie King was found guilty of murder and sentenced to 40 years' imprisonment. On appeal defendant contends that the judgment must be reversed because (1) the trial court erroneously denied defendant's motion to quash arrest and suppress evidence; (2) the court improperly admitted evidence impeaching a defense witness; and (3) the sentence is improper.

Around 9:30 p.m. on December 10, 1983, police, responding to a call, found a body in an alley behind 4611-15 South Indiana in Chicago. Detective Steven Hood was assigned to investigation of the homicide. When he arrived at the alley he saw the body of a woman lying face up in the alley, unclothed except for a dark sweater pulled up to the top of her chest. Snow and ice covered the alley, but the snow had melted under the body. Rigor mortis had not yet set in when Hood arrived at the scene. There was no blood in the immedi-

ate area of the body, and there were no signs of struggle in the alley. There was blood in front of a dumpster, about 10 feet from the body.

Hood spoke to a woman in the alley who identified herself as Star Jackson. She told him that she reported the body to the police, but she did not know who the victim was or how the body came to be in the alley. Jackson told Hood that she lived with her boyfriend, Eddie King, at 4611 South Indiana. Hood saw her return to King's apartment. Another woman showed Hood a bloody blanket that she found in front of that apartment building.

The crime lab took a picture of the victim before removing her body. Hood showed the picture to some people who told him that it looked like a woman named Nina, whose family lived about a block away. Hood showed the picture to the family that lived at that address. Mary Miles identified the victim as her daughter, Nina Stallworth. When she had last seen Stallworth, earlier that day, Stallworth was with her friend Lola Scates.

Hood went to Scates' home and asked her when she last saw Stallworth. Scates said that around 5 p.m., she and Stallworth had been in an apartment in the 4600 block of Indiana. She did not know the name of the man who lived in the apartment, but the woman who lived there was named Star. Scates took the police to the apartment she had visited earlier that day, which was also the apartment Hood had seen Star Jackson enter after she talked to him. Hood and Scates arrived at the apartment around midnight.

Hood knocked on the door repeatedly and waited for five minutes. There was no answer. He kicked the door open. Defendant contends that this warrantless entry violated his rights under the fourth amendment to the Constitution of the United States. The State maintains that the entry was justified by exigent circumstances.

■ Police may not make a warrantless, nonconsensual entry of a private home to make an arrest unless there are exigent circumstances. (*People v. Knight* (1985), 139 Ill. App. 3d 188, 192, 486 N.E.2d 1356.) In determining the exigency of the circumstances, courts must weigh a variety of factors, including: (1) the gravity or violent nature of the offense; (2) whether there were grounds to believe the suspect was armed; (3) whether there was probable cause to believe the suspect committed the offense; (4) whether there was reason to believe the suspect was in the premises; (5) whether the suspect was likely to escape if not promptly arrested; (6) whether the entry was peaceful; and (7) whether the police acted promptly

after receiving information which established probable cause. (*People v. Thompson* (1981), 93 Ill. App. 3d 995, 1004-05, 418 N.E.2d 112, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490.) "These and other factors cited by the courts, however, are only guidelines, with the overall consideration being the reasonableness of the police action in light of what they knew." *People v. Knight* (1985), 139 Ill. App. 3d 188, 192-93, 486 N.E.2d 1356.

In the instant case, Detective Hood knew that Stallworth had been stabbed to death; the offense was grave and violent, and the person who killed her was probably still armed. After Hood talked to Lola Scates, they promptly proceeded to King's apartment. Since Hood knew that a male had been in the apartment much of the day, and he saw Jackson enter the apartment at 9:30 p.m., he had substantial reason to believe King was at the apartment at midnight. Hood attempted to enter the apartment peacefully, as he knocked repeatedly over a five-minute period before kicking in the door to the apartment.

■ Defendant contends that Hood's actions were unreasonable because he did not have probable cause to arrest defendant when he forcibly entered defendant's apartment. Police have probable cause to arrest a suspect when they know facts which "would lead a reasonable man to believe that a crime has occurred and that it has been committed by" the suspect. (*People v. Eddmonds* (1984), 101 Ill. 2d 44, 60, 461 N.E.2d 347, *cert. denied* (1984), 469 U.S. 894, 83 L. Ed. 2d 207, 105 S. Ct. 271.) "Although a 'mere suspicion' that the person arrested has committed the offense is an insufficient basis for arrest [citations], evidence sufficient to convict is not required [citations]." (*People v. Lippert* (1982), 89 Ill. 2d 171, 178-79, 432 N.E.2d 605, *cert. denied* (1982), 459 U.S. 841, 74 L. Ed. 2d 85, 103 S. Ct. 92.) In *Lippert,* our supreme court further stated:

"[T]he probable cause test is a 'compromise' for accommodating the 'often opposing interests' of privacy and law enforcement. The compromise might well be struck somewhat differently in cases where the uncertainty is whether any crime has occurred, for it appears that the privacy and law enforcement interests ought to be weighed somewhat differently in that context. For one thing, it would seem that privacy is threatened less by permitting less than a 50% probability as to the identity of an offender than it is by permitting something short of more-probable-than-not as to the existence of criminal activity. As to the former, the existence of known criminal activity serves to provide an anchor or touchstone, in a time-

space sense, which limits the police arrest authority." 89 Ill. 2d 171, 179, 432 N.E.2d 605, quoting 1 W. LaFave, Search and Seizure sec. 3.2, at 484-85 (1978).

■ In the instant case, Detective Hood knew that a crime had occurred. He knew the victim had been alone with Jackson and a man in King's apartment about four hours before her body was found in the alley behind the apartment. Since the victim was mostly undressed, police had reason to believe that the crime was sex-related, and therefore they had reason to suspect that the man in the apartment committed the crime. These facts constitute probable cause to arrest King. (See *People v. Davis* (1981), 98 Ill. App. 3d 461, 462, 464, 424 N.E.2d 630.) Police may also have had grounds to arrest Jackson, since she had also been in King's apartment with Stallworth shortly before Stallworth died, and she had lied to the police about her knowledge of the incident. The fact that both Jackson and King were suspects does not vitiate the existence of probable cause necessary to justify the warrantless entry into King's apartment. (See *People v. Harris* (1982), 104 Ill. App. 3d 833, 843-44, 433 N.E.2d 343.) Since there was probable cause to arrest defendant, and most of the other factors to consider in determining the propriety of a warrantless entry were present, we find that police acted reasonably in forcibly entering defendant's apartment without a warrant under the exigent circumstances of this case.

When Hood kicked the door open, he saw defendant lying on a bed near the door. Hood noticed "a strong odor of *** cleaning fluid in the apartment." He observed a red stain on the floor which was smeared as though someone had tried to clean it up. Scates walked into the apartment and identified defendant as the man she and Stallworth had visited that afternoon. When defendant rose from the bed, Hood saw a large red stain on the sheets. He also saw a pair of navy blue shoes under the bed and a pair of blue jeans near the front door. He arrested defendant. An assisting unit transported defendant to the police station. Hood searched the apartment, and he removed the sheet, shoes and blue jeans from the apartment.

■ Before trial defendant moved to suppress these items on grounds that they were discovered in a search conducted after defendant was taken to the police station. (See *People v. Kalpak* (1957), 10 Ill. 2d 411, 427-28, 140 N.E.2d 726.) However, Hood testified that each of the items taken into evidence was in plain view in the apartment when he arrested defendant. Defendant did not present any evidence from which the court could conclude that the

items seized were not in plain view at the time of the arrest, nor did he argue that police lacked probable cause to suspect that the items were connected with criminal activity. Therefore, seizure of these items did not violate defendant's rights under the fourth amendment, and the court properly admitted them into evidence. *Illinois v. Andreas* (1983), 463 U.S. 765, 771, 77 L. Ed. 2d 1003, 1010, 103 S. Ct. 3319, 3324.

At trial the State called as a witness the doctor who performed Stallworth's autopsy. He testified that in his opinion she died of strangulation and stab wounds to the chest. An officer from the police department crime laboratory testified that the blood found on defendant's blue jeans and underwear had the same characteristics as Stallworth's blood. The blood of approximately 3% of the population has those characteristics.

The State called Barbara Ann Miller, who testified that she used several aliases, including Star Jackson. She, Stallworth and Scates were drinking with defendant in his apartment on December 10, 1983, when Stallworth fell asleep. Sometime after 5 p.m. defendant told Scates to leave. Scates tried to take Stallworth with her, but she was unable to wake her up. Scates left, but she returned five minutes later. She and Jackson tried to wake Stallworth but they failed. Scates left again. Defendant told Jackson that "he wanted some pussy" from Stallworth, and he tried to wake her. When she did not wake up he hit her with his fist. Defendant then hit the side of Stallworth's head with a one-quart bottle of frozen water. He said to Jackson, "[I]f this bitch wake up, she gon' call the police on me." Defendant removed Stallworth's pants and shoes. He pulled her off the bed and he got a knife from the kitchen. He placed a foot on Stallworth's throat. She began to gasp for air. He stabbed her three times in the chest.

Jackson testified that in November 1983 she had an argument with Stallworth in a poolroom near their homes. Stallworth and Jackson both pulled knives, but neither one inflicted any wounds. On cross-examination, Jackson admitted that she had been arrested for theft, prostitution and drug-related offenses on numerous occasions and she had served several prison terms.

Hood testified that he talked with defendant at the police station after the arrest. At 2 a.m. on December 11, 1983, defendant told Hood that Jackson, Scates and Stallworth had been in his apartment on December 10. He asked Scates to leave because she was too young to drink. He went to the liquor store and when he returned he saw Stallworth on his bed. Her chest was covered with blood. He

wrapped her in a blanket and took her out of the apartment in order to take her to a doctor. Once he realized that she was already dead, he left her body in the alley.

At 12:15 p.m. on December 11, he made a confession in the presence of a court reporter. He stated that on December 10, he said to Stallworth, "Come on, baby. I want some pussy." He tried to pull her pants down and she started cursing and insulting his family. He hit her with a bottle and then he stabbed her.

Erma Scates testified for the defense that she saw Jackson and Stallworth arguing in a poolroom during November 1983, and she saw Jackson pull out a knife. Jackson said to Stallworth, "I am going to cut your throat, Bitch," but other people in the poolroom kept them apart. Lola Scates testified that she, Jackson, Stallworth and defendant were drinking in defendant's apartment during the afternoon of December 10, 1983. She left around 5 p.m. at defendant's request. She came back a few minutes later to take Stallworth with her. When Jackson opened the door, Scates saw that she had a knife in her hand. Jackson did not allow Scates to enter. Scates testified that she told the police that night that she had seen Jackson holding a knife.

The State called two rebuttal witnesses. Stallworth's mother, Mary Miles, testified that she spoke with Scates the day before Scates testified. Over defendant's objection Miles testified that "Lola said that [Jackson] is not going to get away with this. She say ['E]ven if I have to lie on her *** I would ***.[']" When Miles talked to Scates on the night of the murder, Scates did not tell her she had seen Jackson holding a knife. Detective Robert Evans testified that he, too, spoke with Scates on the night of the murder, and Scates did not mention then that she had seen Jackson with a knife in her hand.

▇ Defendant argues that the trial court committed reversible error when it admitted Miles' testimony into evidence as impeachment of Scates without proper foundation for the impeachment. The prosecutor did not ask Scates about either of her conversations with Miles. A proper foundation must be laid before prior inconsistent statements of a witness are allowed into evidence for purposes of impeachment. Part of the necessary foundation is asking the witness whether she made the inconsistent statements in the prior conversation. (*People v. Lee* (1979), 69 Ill. App. 3d 756, 759, 387 N.E.2d 1121.) The prosecutor did not lay the proper foundation in the present case, and therefore the trial court erred when it admitted into evidence the rebuttal testimony of Marie Miles.

■■ ■ The State contends that the error was harmless because Scates was also impeached by Detective Evans and the evidence against defendant was overwhelming. "Evidentiary errors *** can be labeled harmless only if properly admitted evidence is so overwhelming that no fair-minded jury could reasonably have voted to acquit the defendant ***." (*People v. Carlson* (1982), 92 Ill. 2d 440, 449, 442 N.E.2d 504.) In the case at bar, defendant confessed to the crime and his confession was substantially corroborated by Jackson, who was an eyewitness to the murder. Jackson's testimony was also consistent with the testimony of the doctor who performed the autopsy and the lab technician who found the victim's blood on defendant's underwear. Defendant did not explain the presence of that blood in a manner consistent with his theory that Jackson killed Stallworth and defendant carried the body out to the alley. Under these circumstances we find that no jury could have reasonably acquitted defendant, and therefore we conclude that the error was harmless. Defendant's conviction for the murder of Stallworth is affirmed.

Finally, defendant claims that the trial court improperly imposed a sentence of 40 years' imprisonment. At the sentencing hearing the State sought an extended-term sentence because of the brutality of the crime. In mitigation, defendant presented evidence that he had had minimal contact with the law: he had not been convicted of any offense since 1966, when he was found guilty of involuntary manslaughter; he also was found guilty of aggravated assault in 1964. He stated that he suffers from diabetes and high blood pressure. The judge stated:

"In imposing the sentence I'm taking into consideration the injuries involved here *** and the way the murder was committed ***.

***

*** [C]ertainly the murder was brutal. *** But I do not think an extended term is appropriate *** even though this was a very brutal and heinous crime."

Defendant maintains that the judge could not properly take the brutal nature of the crime into account in order to impose the maximum nonextended-term sentence. Section 5—5—3.2(a) (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(a)) lists factors which shall be accorded weight in favor of imposing a more severe sentence under section 5—8—1. (Sentence of Imprisonment for Felony, Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1.) The brutality with which the crime was committed is not listed there. It is one of the factors to

be considered by the court as a reason to impose an extended sentence under section 5—8—2. (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—5—3.2(b)(2), 1005—8—2.) However, the factors listed in section 5—5—3.2(a) are not the only factors a court may consider in imposing a more severe nonextended-term sentence.

> "A hearing in aggravation and mitigation is an inquiry into pertinent facts and circumstances which will enable the trial judge to exercise his discretion in determining the length of sentence. The court *** may search anywhere within reasonable bounds for other facts tending to aggravate or mitigate the sentence." *People v. Allen* (1983), 119 Ill. App. 3d 845, 846, 457 N.E.2d 77.

■ Defendant relies on *People v. Killen* (1982), 106 Ill. App. 3d 65, 435 N.E.2d 789, in support of his argument that the trial court could consider only the factors listed in section 5—5—3.2(a). In *Killen*, the court reversed a maximum sentence of 30 years for deviate sexual assault, predicated on a finding that the crime was accompanied by exceptionally heinous behavior indicative of wanton cruelty, stating:

> "Section 5—5—3.2(b)(2) was not intended to provide an automatic imposition of a maximum term sentence, without imposing the extended-term sentence." (106 Ill. App. 3d 65, 67, 435 N.E.2d 789.)

In this case the trial court did not automatically impose a maximum term; instead it properly considered all of the statutory factors in aggravation and mitigation, and it also considered the brutality of the crime. We believe that this procedure comports with both the statute and the holding of *Killen*. The trial court did not abuse its discretion in sentencing defendant to the maximum nonextended term of 40 years.

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA, P.J., and FREEMAN, J., concur.