OPINION OF THE COURT
Lorraine S. Miller, J.
Defendant, charged with the crimes of rape, first degree (5 counts), sodomy, first degree (5 counts), and sexual abuse, first degree (8 counts), moved for discovery concerning the Rape Crisis Center where complainant received counseling and the dates thereof. The prosecution opposed discovery on three grounds: (a) confidentiality of such information; (b) failure of defendant to present factual allegations that such information and records are relevant and material on the issue of guilt or innocence; and (c) absence of statutory or common-law authority for discovery of such documents.
Defendant is accused of accosting complainant on or about June 25/June 26, 1984, while she was returning home. Defendant allegedly forced her into the building’s basement where he raped her repeatedly, threatening to shoot her if she resisted. No gun was recovered.
The instant motion is a matter of apparent first impression. The court is unable to find any statutory or common-law authority in this jurisdiction which makes statements made to and records kept by rape crisis counselors “privileged communications.” However, New York has previously enacted several statutes designating various communications between attorney and client (CPLR 4503), clergy and penitent (CPLR 4505), physician and patient (CPLR 4504), reporter and informant (Civil Rights Law § 79-h), psychologist and patient (CPLR 4507), social worker and client (CPLR 4508) and husband and wife (CPLR *1058 4502 [b]) as “privileged.” The court has found one jurisdiction, Pennsylvania, which extends the privilege to statements by a complainant and records made in the course of consultation with rape counselors.[1]
Although New York has not yet enacted a similar statute, our Legislature considered two bills in 1984 accomplishing that result by adding a new section 4510 to the CPLR (Farley, et al., S-2378-B; Introducer, M.H. Miller, Rules A-11366). The proposed legislation would have granted rape victims the right to refuse to disclose and prevented any other person from disclosing confidential communications made to rape crisis counselors during the course of obtaining assistance. The Senate bill was twice amended and recommitted in the Senate (May 16 and June 20) and once in the Assembly (May 16), but did not reach the legislative floor in time for a vote prior to adjournment.
Privileges are in nature evidentiary rules of exclusion which require the balancing of the interest of society in protecting certain relationships with that of the need for fair administration of justice. As one leading authority in the law of evidence observes: “Privileges are in essence rules of exclusion, but, while most exclusionary rules tend to guard against the admission of evidence of low probative force, or of proof calculated to mislead or prejudice, privileges are designed to protect relationships deemed socially desirable. The maintenance of privileges results in the exclusion of much valuable evidence but the social benefit to be derived from the protected relationship is believed to outweigh the harm that results from exclusion. Fundamentally, the problem of admissibility of a privileged communication involves a balancing between conflicting social values. In most cases the conflict occurs between the desire to maintain a certain relationship and the need for just resolution of legal controversies.” (Fisch, New York Evidence § 511, at 335 [2d ed]).
In the instant case, this court must balance defendant’s 6th Amendment right of confrontation and cross-examination of an adverse witness, his right to exculpatory evidence and evidence material to the issue of guilt or innocence as articulated in Brady v Maryland (373 US 83) and his right to statements made by prosecution witnesses as set forth in People v Rosario (9 NY2d 286) with the right of the complainant to seek counseling *1059 at rape crisis centers to aid her in dealing with the trauma of rape and her reasonable expectation that such counseling will not be made public.
New York courts have engaged in this type of balancing of interests analysis in considering the confidentiality of specific reports and records prepared in the ordinary course of business in other cases. In People v Gissendanner (48 NY2d 543 [1979]), defendant, convicted of criminal sale of cocaine, asserted that the trial court’s refusal to permit her discovery of confidential personnel records of two police officers violated her constitutional right of confrontation. Defendant’s purpose in requesting the records was “to find material appropriate for cross-examinatian”; she, however, failed to request any in camera inspection thereof. The Appellate Division, in affirming the trial court’s refusal to issue subpoenas for the records, characterized defendant’s request as a “fishing expedition”. The Court of Appeals concurred and held that the personnel files were confidential. While balancing the conflict between defendant’s constitutional right of confrontation and the interest of the State in maintaining confidential data relating to police performance and discipline, the court clearly stated that defendant’s rights are “not so broad as to permit a roving tour through the prosecutor’s files and that, at times, the necessities of effective law enforcement may require that such information be kept confidential” (at p 551). The court also pointed out that defendant failed to demonstrate that the records were relevant and material to the issue of guilt or innocence, and absent such requisite demonstration, the request could be denied in the court’s discretion without any in camera inspection. The court emphasized:
“access has been denied in cases in which the defendant failed to demonstrate any theory of relevancy and materiality, but, instead, merely desired the opportunity for an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable him to impeach the witness (see People v Norman, 76 Misc 2d 644 [police personnel records]; State v Sagner, 18 Ore App 464 [police disciplinary records]; Commonwealth v Santos, [376] US [920], 384 NE2d 1202 [sealed juvenile record]). Indeed, entitlement to access on no more than a bare allegation that the inspection is sought as fodder for an untracked attack on credibility would render the principle of confidentiality meaningless for all practical purposes.
“The thread that runs through these cases does not indicate that a defendant must make a preliminary showing that the *1060 record actually contains information that carries a potential for establishing the unreliability of either the criminal charge or of a witness upon whose testimony it depends. The decisions erect no inviolable shield to prevent the discovery of what might turn out to be relevant and exculpatory material. What they do call for is the putting forth in good faith of some factual predicate which would make it reasonably likely that the file will bear such fruit and that the quest for its contents is not merely a desperate grasping at a straw. Here there was no such demonstration.” (At pp 549-550; emphasis supplied.)
The court also noted parenthetically that Civil Rights Law § 50-a (L 1976, ch 413, § 2), although effective after defendant’s trial, codified standards for discovery for disclosure (at p 551). This same standard has been applied in other similar situations. (See, People v Clayton B., 110 Misc 2d 567 [defendant’s request for complainant’s probation report denied after in camera inspection on grounds of failure to demonstrate relevance or materiality]; Matter of Commissioner of Social Servs. v David R. S., 55 NY2d 588 [access to patient’s records at drug abuse center denied to putative father who failed to show “good cause” to direct disclosure].)
In the instant case, defendant has neither advanced any good faith “factual predicate” for discovery of the information nor requested an in camera inspection thereof; he merely requests same in his demand for a bill of particulars. He has not given the court any indicia that the records bear even the slightest potential for revealing information that bears on the issue of guilt or innocence, unreliability of witnesses or exculpatory material. For the aforementioned reasons, it is apparent that defendant’s attempt to secure the information constitutes “a desperate grasping at a straw.”
In short, defendant seeks permission to embark on a “fishing expedition” or “roving tour” through such personal information without a charted destination or stated purpose. Gissendanner and its progeny are clear; defendant has the burden of demonstrating by specific factual allegations the relevance or materiality of the records in issue. Since defendant has failed to make such requisite demonstration, the court is constrained to deny his request without in camera inspection.[2]
*1061 Defendant’s request is denied on a second ground. This court cannot, under the facts and circumstances of the case, find any legal or logical impediment to holding that the Rape Crisis Center’s records are privileged. Defendant has failed to present any statutory or common-law authority requiring disclosure of such records nor does he argue that failure to disclose such information would result in constitutional deprivations under Brady or Rosario. In short, he has not given the court any reason why, in balancing his rights with that of the complainant’s right to confidential counseling that the scales should be weighed in his favor.
In balancing defendant’s constitutional rights with that of complainant’s need for confidential counseling, the court cannot ignore the psychological and emotional trauma caused by this violent and heinous crime. The human suffering caused by rape not only far outlives the ^criminal prosecution thereunder, but often makes complainants reluctant to testify, thereby impeding effective prosecution. In the memorandum in support of the proposed Farley bill, the sponsors stated: “Victims of sexual assault in our State are assisted in many instances by Rape Crisis personnel and counselors. Such counselors are trained to overcome the fear, shame, and reluctance of the victims to recount the traumatic events of the assault. One of the key elements in the successful counseling of such victims is the assurance of confidentiality of their communications. However, this confidentiality is often violated by defense attorneys who are permitted to use the information to the advantage of the defendant whom they represent during cross-examination of the victim. It is one of the great ironies of our criminal justice system that an attacker may safely confess to his attorney the details of the crime he has committed, with full confidence that this information is not available to others to be used against him during trial. The victim of such an assault, however, has no such guarantee. Any information which passes between victim and counselor may find its way into the hands of defense attorneys to be used to the great disadvantage of the victim.”
To grant defendant disclosure of the records in issue would only perpetuate this great irony. Accordingly, this court finds, *1062 under the facts and circumstances herein presented, that the records and information in issue are privileged, and the motion for discovery is denied.

. Pennsylvania statute, 42 Pa Cons Stats Ann § 5945.1 (b), provides in relevant part: “[a] sexual assault counselor has a privilege not to be examined as a witness in any civil or criminal proceeding without written consent of the victim being counseled as to any confidential communications made by the victim to the counselor or as to any advice, report or working paper given or made in the course of the consultation.”

. Parenthetically, the court notes that the proposed Farley bill would also allow for discovery of such records on motion supported by “specific factual allegations.” The proposed CPLR 4510 (f) provides: “Disclosure under this section may be ordered on motion by the defendant or the people, supported by specific factual allegations that give reasonable cause to believe that disclosure of the privileged materials is essential to a fair determination of guilt or *1061 innocence. If such allegations are made, then the court may require the counselor or client to appear or to provide documents in camera, out of the presence of counsel for both the prosecution and the defense, and to disclose the substance of the communications, in order to enable the court to determine whether disclosure should be required.”