(No. 64573

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LESLIE FOGGY, Appellant.

*Opinion filed February 11, 1988.*

SIMON, J., dissenting.

Robert Agostinelli, Deputy Defender, and Stephen Omolecki, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Kenneth A. Fedinets, Assistant Attorney General, of Chicago, of counsel), for the People.

Judy L. Hogan, of Springfield, for *amicus curiae* Illinois Coalition Against Sexual Assault.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Rock Island County, the defendant, Leslie Foggy, was convicted of aggravated criminal sexual assault and unlawful restraint. The trial judge sentenced the defendant to concurrent 30-year and 3-year terms of imprisonment for those offenses. The appellate court affirmed the judgment (149 Ill. App. 3d 599), and we allowed the defendant's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The defendant does not contest the sufficiency of the evidence of his guilt, and that evidence may be summa-

rized briefly. The offenses in question occurred in Rock Island on July 18, 1985. The complaining witness, a 26-year-old woman, was abducted from in front of her home around three o'clock that morning by the defendant, who forced her into a car and drove off. The defendant told the victim that he had a gun, and he compelled her to perform oral sex. The defendant eventually drove to a park in the area, where he raped the victim. The defendant later released her near a convenience store, and she told the sales clerk what had happened. The victim was then taken to a local hospital. There, she was shown a photographic array by police, and she identified the defendant as her attacker. The defendant was arrested at his home following the identification. He testified at trial, and he said that the sexual acts were consensual and that afterwards the victim became upset when he refused to give her money.

The sole issue raised by the defendant in this appeal concerns the constitutionality of the statutory privilege for communications made to rape crisis counselors. (Ill. Rev. Stat. 1985, ch. 110, par. 8—802.1.) The Illinois Coalition Against Sexual Assault has filed a brief as *amicus curiae* in support of the provision. Section 8—802.1 of the Code of Civil Procedure provides, in its entirety:

> "(a) Purpose. This Section is intended to protect victims of rape from public disclosure of statements they make in confidence to counselors of organizations established to help them. On or after July 1, 1984, 'rape' means an act of forced sexual penetration or sexual conduct, as defined in Section 12—12 of the Criminal Code of 1961, as amended, including acts prohibited under Sections 12—13 through 12—16 of the Criminal Code of 1961, as amended. Because of the fear and stigma that often results from those crimes, many victims hesitate to seek help even where it is available at no cost to them. As a result they not only fail to receive needed medical care and emergency counseling, but may lack the psycho-

logical support necessary to report the crime and aid police in preventing future crimes.

(b) Definitions. As used in this Act: (1) 'Rape crisis organization' means any organization or association the major purpose of which is providing information, counseling, and psychological support to victims of any or all of the crimes of aggravated criminal sexual assault, criminal sexual assault, sexual relations between siblings, criminal sexual abuse and aggravated criminal sexual abuse.

(2) 'Rape crisis counselor' means a person who is employed in any organization or association defined as a rape crisis organization under this Section, who is a psychologist, social worker or a volunteer who has undergone 40 hours of training and is under the control of a direct services supervisor of a rape crisis organization.

(3) 'Confidential communication' means any communication between an alleged victim of aggravated criminal sexual assault, criminal sexual assault, sexual relations between siblings, criminal sexual abuse and aggravated criminal sexual abuse or an attempt to commit any such offense and a rape crisis counselor in the course of providing information, counseling and advocacy. The term includes all records kept by the counselor or by the organization in the course of providing services to an alleged victim concerning the alleged victim and the services provided.

(c) Confidentiality. No rape crisis counselor shall disclose any confidential communication or be examined as a witness in any civil or criminal proceeding as to any confidential communication without the consent of the victim.

(d) Any rape crisis counselor who knowingly discloses any confidential communication in violation of this Act commits a Class C misdemeanor." Ill. Rev. Stat. 1985, ch. 110, par. 8—802.1.

In the aftermath of the assault, the victim sought and obtained counseling from the Quad City Rape/Sexual Assault Counseling Program. Before trial, the defendant issued a subpoena *duces tecum* on that organization seeking information regarding the complaining witness. Motions to quash were filed by the State and by Joni Dittmer, who

was the rape crisis counselor assisting the victim. They contended that the victim's communications with Dittmer were absolutely privileged under section 8—802.1 and therefore could not be disclosed without the victim's consent, which she had not given. A copy of the subpoena does not appear in the record in this case; according to the circuit judge's order, the defendant sought production of " 'all records, reports, notes, memoranda, statements, oral, recorded, or written, and any and all other documents concerning the alleged assault upon the witness.' " A hearing was conducted on the matter, and at that time counsel narrowed the scope of his request for information, indicating that he was seeking information that could be used for impeachment purposes. At the hearing, the State presented testimony from Berlinda Tyler-Jamison, the program director, and from Joni Dittmer, the counselor in this case, regarding the operation and services of the Quad City Counseling Program. In her testimony, Joni Dittmer explained that she had told the victim that the counseling services were free and confidential. Dittmer said that part of her assistance involved what she termed legal advocacy, which, she explained, meant that she helped the victim keep track of the legal proceedings in the case and would attend court sessions with her.

The circuit judge quashed the subpoena, ruling that the communications between Dittmer and the victim were protected from disclosure by the statutory privilege and that the statute was constitutional. Specifically, the circuit judge found that the Quad City Counseling Program was a rape crisis organization within the meaning of section 8—802.1(b)(1), that Dittmer was a rape crisis counselor within the meaning of section 8—802.1(b)(2), and that Dittmer and the victim had had six separate conversations and that each one was a confidential communication within the meaning of section 8—802.1(b)(3). The court also found that at no time had the victim con-

sented to Dittmer's disclosure of any of those communications. The circuit judge also rejected the defendant's argument that the statute was unconstitutional. The judge noted that the victim in this case would be testifying in court and therefore subject to cross-examination. For those reasons, the court did not believe that the communications at issue here represented "a significant or irreplaceable means of impeaching her as a government witness." The judge concluded that there was no substantial conflict in this case between the statutory privilege and the defendant's right to conduct a defense to the charges against him. The circuit judge therefore quashed the subpoena. The appellate court affirmed the trial court's judgment, rejecting the defendant's challenge to the constitutionality of section 8—802.1.

The defendant renews here his argument that the privilege accorded by section 8—802.1 to communications between sexual assault victims and counselors violates his Federal constitutional rights to due process and to confront the witnesses against him. (U.S. Const., amends. VI, XIV; *Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065; see also Ill. Const. 1970, art. I, §8; *People v. Tennant* (1976), 65 Ill. 2d 401, 408 (the Federal and State confrontation clauses "are meant to protect the same interest").) The defendant asks for an *in camera* inspection of the records of the Quad City Counseling Program concerning the victim, with disclosure to the defense of her statements recounting the occurrence.

In support of his argument, the defendant cites the decisions of other courts that have refused to enforce, or have refused to recognize, an absolute privilege for communications made by sexual assault victims to counselors. In addition to applying their own precedents concerning privileges, those courts have relied on *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105,

and *Washington v. Texas* (1967), 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920, which found constitutional violations in State laws excluding certain forms of evidence from trial, and on *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090, which rejected a broad claim of executive privilege in the face of an articulated need for information. (See *In re Robert H.* (1986), 199 Conn. 693, 509 A.2d 475; *Advisory Opinion to the House of Representatives* (R.I. 1983), 469 A.2d 1161; see also *Matter of Pittsburgh Action Against Rape* (1981), 494 Pa. 15, 428 A.2d 126 (refusing to recognize a common law privilege for communications made to rape counselors; the legislature has since enacted a statute providing an unqualified privilege (see 42 Pa. Cons. Stat. §5945.1 (1982)).) A contrary result has been reached by the Colorado Supreme Court, which held that an *in camera* inspection of a sexual assault victim's counseling records was barred by that State's psychologist/patient privilege. *People v. District Court* (Colo. 1986), 719 P.2d 722.

In *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, the Court found a violation of the defendant's confrontation right in a prohibition on certain impeachment. Before trial in that case, the prosecution requested a protective order to preclude defense counsel from cross-examining one of the State's principal witnesses regarding his juvenile record. Defense counsel argued that the information would be relevant to show possible bias on the witness' part in assisting the police in the matter. The trial judge granted the protective order, relying on State provisions that generally precluded use of juvenile records in judicial proceedings. At trial, defense counsel asked the witness whether he was biased in the State's favor but, consistent with the trial judge's ruling, did not make any inquiry concerning the witness' juvenile record. The United States Supreme Court reversed the defendant's conviction. The Court did not believe that

the cross-examination of the witness had been adequate, for although defense counsel had been able to ask the witness whether he was biased, counsel had not been able to explore the possible sources of bias. Moreover, the Court did not believe that the State's interest in preserving the confidentiality of juvenile records warranted their broad exclusion in that case. The Court concluded that "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of a defense witness." (*Davis*, 415 U.S. at 320, 39 L. Ed. 2d at 356, 94 S. Ct. at 1112.) The Court remanded the cause for further proceedings.

Discussing *Davis*, one commentator has noted:

> "In the first instance, it is probable that the defendant's ability to challenge claims of privilege as impairing his 'right to present a defense' will to some extent be dependent upon the criticality to that defense of the matter protected by the privilege. In *Davis*, the privileged matter in effect represented a significant and irreplaceable means of impeaching the chief prosecution witness. By contrast, where the privileged matter desired is of significantly lesser probative force or simply cumulative, its denial to the defendant has been held not to violate the constitutional guarantees." (McCormick, Evidence §74.2, at 179 (3d ed. 1984).)

In quashing the subpoena, the circuit judge concluded that the material requested by the defendant in this case did not represent critical or irreplaceable information, citing the quoted passage.

A similar question was considered recently in *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 94 L. Ed. 2d 40, 107 S. Ct. 989, which is cited by both the State and the defendant in support of their arguments here. In that case, which involved a confidentiality statute, a plurality of the Court rejected a confrontation clause argument like that made by the defendant in this case. The Court

held that an *in camera* inspection of certain records was required, however. The defendant in *Ritchie* was charged with committing a number of sexual offenses against his 13-year-old daughter. Before trial, Ritchie subpoenaed the records of a State agency, Children and Youth Services (CYS), seeking information that had been developed in his daughter's case; CYS investigated allegations of mistreatment and neglect of children, and Ritchie's daughter had been referred to the agency by police. CYS claimed a statutory privilege in the records and refused to disclose them. The trial judge agreed with the agency and denied disclosure; Ritchie's case then went to trial, and he was convicted of the charges.

The United States Supreme Court considered Ritchie's claim under both the confrontation and compulsory process clauses. Ritchie argued that nondisclosure of the State agency's file interfered with his confrontation right because the files might have contained information, such as inconsistent statements, that would have been useful in cross-examining the complaining witness. The Pennsylvania Supreme Court had agreed with Ritchie, relying in part on *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105. The plurality in *Ritchie* characterized confrontation as essentially a trial right and believed that it would be satisfied by the defendant's physically facing the witnesses against him and by counsel's cross-examination of them. The plurality opinion said:

> "If we were to accept this broad interpretation of *Davis*, the effect would be to transform the Confrontation Clause into a constitutionally-compelled rule of pretrial discovery. Nothing in the case law supports such a view. The opinions of this Court show that the right of confrontation is a *trial* right designed to prevent improper restriction on the types of questions that defense counsel may ask during cross-examination. [Citations.] The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information

that might be useful in contradicting unfavorable testimony." (Emphasis in original.) (*Ritchie*, 480 U.S. at 52-53, 94 L. Ed. 2d at 54, 107 S. Ct. at 999.)

The plurality concluded that "[b]ecause defense counsel was able to cross-examine all of the trial witnesses fully," the failure to disclose the agency's records did not violate Ritchie's confrontation right. 480 U.S. at 54, 94 L. Ed. 2d at 55-56, 107 S. Ct. at 1000.

In *Ritchie* the Supreme Court also considered the defendant's argument that nondisclosure of the agency's file violated his sixth amendment guarantee of compulsory process. Analyzing that question in terms of due process, the Court concluded that, under the Pennsylvania statute at issue in that case, the defendant was entitled to have the trial judge conduct an *in camera* inspection of the records at issue. In Ritchie's case, neither the prosecution nor the defense had seen the information, and the trial judge had not reviewed the entire file. Because the privilege was not absolute, the Court rejected the State's argument that the statutory privilege would preclude an examination of the agency's records in the case. Citing the Pennsylvania statute that provides an absolute privilege for communications between sexual assault victims and their counselors, the Court noted that it was expressing "no opinion on whether the result in this case would have been different if the statute had protected the CYS files from disclosure to *anyone*, including law-enforcement and judicial personnel." (Emphasis in original.) (*Ritchie*, 480 U.S. at 57 & n.14, 94 L. Ed. 2d at 57 & n.14, 107 S. Ct. at 1002 & n.14.) Rather, the statutory privilege at issue was not absolute, and one exception permitted CYS to "disclose the reports to a 'court of competent jurisdiction pursuant to a court order.' " (*Ritchie*, 480 U.S. at 44, 94 L. Ed. 2d at 49, 107 S. Ct. at 995.) In light of that exception, the Supreme Court said:

"Given that the Pennsylvania legislature contemplated *some* use of CYS records in judicial proceedings, we cannot conclude that the statute prevents all disclosure in criminal prosecutions. In the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is material to the defense of the accused." (Emphasis in original.) (*Ritchie*, 480 U.S. at 58, 94 L. Ed. 2d at 58, 107 S. Ct. at 1002.)

The Court did not believe, however, that defense counsel was entitled to review the file himself so that he could argue for the relevance of particular information. Rather, the Court held that an *in camera* inspection of the file by the trial judge would be sufficient. *Ritchie*, 480 U.S. at 60, 94 L. Ed. 2d at 59, 107 S. Ct. at 1003.

The privilege contained in section 8—802.1 is unqualified, and we are therefore met with an issue unresolved by *Ritchie*: whether an absolute privilege must yield to a criminal defendant's pretrial discovery request for otherwise privileged information that may provide material for use in cross-examining witnesses. Again, we note that the defendant here was requesting only an *in camera* inspection of the material, with disclosure limited to communications recounting the commission of the offenses. The defendant's request was merely general, however, and was not supported by any allegations that material useful to the defense of this case was likely to be found in the files of the Quad City Counseling Program. From the following analysis of the statutory privilege, we conclude that the defendant's suggested procedure was not constitutionally required in this case.

The legislature's intent in section 8—802.1 of the Code of Civil Procedure to protect the confidentiality of communications between sexual assault counselors and

victims is clear. The stated purpose of the statute is as follows:

> "This Section is intended to protect victims of rape from public disclosure of statements they make in confidence to counselors of organizations established to help them. \*\*\* Because of the fear and stigma that often results from those crimes, many victims hesitate to seek help even where it is available at no cost to them. As a result they not only fail to receive needed medical care and emergency counseling, but may lack the psychological support necessary to report the crime and aid police in preventing future crimes." (Ill. Rev. Stat. 1985, ch. 110, par. 8—802.1(a).)

Moreover, as the appellate court noted in this case, the legislature originally allowed only a qualified privilege for communications between sexual assault counselors and victims but later decided to strengthen the privilege and make it absolute. (149 Ill. App. 3d 599, 601-03.) The predecessor statute expressly provided for an *in camera* inspection of those records, in the manner urged by the defendant here. (See Ill. Rev. Stat., 1982 Supp., ch. 110, par. 8—802.1(c).) The legislature later eliminated that provision, replacing it with a broader statement of confidentiality and adding the penalty provision found in section 8—802.1(d), which makes an unauthorized disclosure a class C misdemeanor. (Ill. Rev. Stat. 1985, ch. 110, pars. 8—802.1(c), (d).) With these amendments, the statute thus became one of the type left unexplored in *Ritchie*.

We also find significant the contention of *amicus* that the role of rape crisis counselors is not to investigate the occurrence. Rather, the primary purpose of the counseling is to help the victim understand and resolve her feelings about the event. Thus, according to the *amicus*, an *in camera* inspection of counseling records would not

likely result in the disclosure of any material useful to an accused.

It is important to note that in this case the defendant's request for an *in camera* inspection of the counseling records was merely general; he did not allege that information may exist in the counseling files that would be subject to disclosure. Moreover, the defendant had access to the array of unprivileged statements made by the complaining witness to other persons following the commission of the offenses, including the nearly contemporaneous statements made by the victim to the store clerk, and also had available the victim's testimony at the preliminary hearing. Because of the strong policy of confidentiality expressed in section 8—802.1 and the absence of any indication by the defendant that the victim's communications with the counselor would provide a source of impeachment, we do not believe that the privilege was required to be breached in this case. "The vague assertion that the victim may have made statements to her therapist that might possibly differ from the victim's anticipated trial testimony does not provide a sufficient basis to justify ignoring the victim's right to rely upon her statutory privilege." (*People v. District Court* (Colo. 1986), 719 P.2d 722, 726; see also *Commonwealth v. Two Juveniles* (1986), 397 Mass. 261, 269, 491 N.E.2d 234, 239 (before *in camera* inspection of otherwise privileged sexual assault counseling records may be ordered, accused "must show a legitimate need for access to the communications").) Under the circumstances present here, to abrogate the privilege in this case would require its abrogation in every case, and that we decline to do.

We note that under the theory proposed by the dissent, in every case a trial judge could become privy to all counseling records of a sexual assault victim, regardless of what was discussed in the counseling sessions and in the absence of any demonstrated need that would justify

such an intrusion. The victim in this case was told that the services of the Quad City Counseling Program were both free and confidential, but under the dissent's view that advice would no longer be appropriate—a special admonition would become necessary, to accommodate the very real possibility that a judge later would be examining the records of the counseling sessions. This, we believe, would seriously undermine the valuable, beneficial services of those programs that are within the protection of the statute.

In sum, section 8—802.1 of the Code of Civil Procedure evinces a strong public policy in favor of the confidentiality of communications between sexual assault victims and counselors. Unlike the defendant in *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, who knew of specific information that could show bias or motive to fabricate on the part of the prosecution witness, and who had no other means of achieving that end, the defendant here has offered no reason to believe that the victim's counseling records would provide a source of impeaching material unavailable from other sources. We conclude that the defendant was not denied due process, nor was his confrontation right violated, by the trial judge's refusal in this case to conduct an *in camera* inspection of the victim's counseling records.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

In the not so distant past a rape victim was forced to undergo an adjudicative ordeal equalling the horror of the original assault in order to bring her attacker to justice. (See Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Colum. L. Rev. 1 (1977).) Our legislature is to be commended for enacting

a powerful rape shield law (Ill. Rev. Stat. 1985, ch. 38, par. 115—7), protecting the victim from humiliating accusations and inquiries into her past sexual history as the price for testifying in a rape case. To further alleviate the duress of victims of rape, the legislature enacted the statute in issue in this case (Ill. Rev. Stat. 1985, ch. 110, par. 8—802.1), absolutely prohibiting disclosure of communications between rape victims and rape counselors unless the victim consents. In its zeal to erase the legal indignities suffered by victims of rape in the past, however, I believe the legislature has gone too far. To deem all communications between victim and counselor absolutely privileged impermissibly impinges upon a defendant's constitutional rights to due process of law and confrontation of the witnesses against him. A balance must be struck between the rights of the accuser and the rights of the accused, in which the victim is shielded from needless intrusions into the rape-counseling process, without denying the defendant the right to discover and utilize information tending to exculpate him. Allowing, at a minimum, *in camera* inspection by the trial court of the communications between the rape crisis counselor and the victim would achieve the balance necessary to protect the interests of both parties.

Most of the rules governing the conduct of litigation under our system of justice are designed to ensure that all relevant and reliable evidence is presented to the fact finder in an orderly manner so that there may be a true and fair resolution of each case. In contrast, privileges are designed to withhold certain evidence from the trier of fact, for the "protection of interests and relationships which *** are regarded as of sufficient social importance to justify some sacrifice of availability of evidence." (E. Cleary, McCormick on Evidence §72, at 171 (3d ed. 1984).) As exceptions to the general rule of admissibility of all relevant evidence, privileges should be strictly lim-

ited and construed. See 8 J. Wigmore, Evidence in Trials at Common Law §2291, at 554 (1961) ("privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative, its obstruction is plain and concrete. *** It ought to be strictly confined within the narrowest possible limits ***"); E. Cleary, McCormick on Evidence §79, at 192 (3d ed. 1984) ("privileges in general *** are inept and clumsy devices for promoting the policies they profess to serve, but are extremely effective as stumbling blocks to obstruct the attainment of justice ***, the movement should be toward restriction of these devices rather than their expansion"); *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (as exceptions to the general rule of disclosure, privileges "are not lightly created nor construed, for they are in derogation of the search for truth").

In determining which interests and relationships should be protected by privilege, and to what extent they should be protected, courts and legislatures must balance the State's interest in the privilege against the constraints the privilege places on the fair and effective administration of justice. In the present case, the State's interest in providing confidential counseling services to the victims of rape must be weighed against the defendant's constitutional rights to due process of law and to confrontation of witnesses against him. Although the State's interest in this case is a strong one and undoubtedly justifies a statute conferring some privilege protection on counseling records (such as the prior Illinois statutue providing for *in camera* review (Ill. Rev. Stat., 1982 Supp., ch. 110, par. 8—802.1(c))), it is not strong enough to sustain an absolute privilege which renders meaningless the defendant's constitutional rights.

Based on the due process clause of the fourteenth amendment, the United States Supreme Court has re-

peatedly refused to restrict a criminal defendant's rights to obtain or introduce potentially exculpatory evidence. (See, *e.g., Wardius v. Oregon* (1973), 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208; *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038; *Washington v. Texas* (1967), 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920.) Where due process rights conflict with claims of privilege, the privilege must yield. In *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090, President Richard Nixon sought to quash a subpoena seeking disclosure of certain materials in his possession which he claimed were protected by an absolute executive privilege. The President contended the privilege was based on the need for confidentiality of high-level governmental communications and on the doctrine of separation of powers. The Court acknowledged the necessity and validity of executive privilege but held that the policies underlying the privilege could not sustain an absolute immunity from judicial process. In reaching its conclusion, the Court noted that the Constitution "guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate [this] guarantee[ ], and to accomplish that it is essential that all relevant and admissible evidence be produced. *** [T]he allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts." *Nixon*, 418 U.S. at 711-12, 41 L. Ed. 2d at 1066, 94 S. Ct. 3109-10.

Moreover, the withholding by the government of evidence "that is both favorable to the accused and material to guilt or punishment" violates a defendant's due process rights. (*Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 57, 94 L. Ed. 2d 40, 57, 107 S. Ct. 989, 1001; *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342,

96 S. Ct. 2392; *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) Evidence is "material to guilt or punishment" only if " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " (*Ritchie*, 480 U.S. at 57, 94 L. Ed. 2d at 57, 107 S. Ct. at 1001, quoting *United States v. Bagley* (1985), 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375.) In *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 94 L. Ed. 2d 40, 107 S. Ct. 987, defendant sought review of the contents of a confidential child-abuse file protected by a statutory privilege in order to determine whether there were material facts contained therein which would enable defendant to cross-examine the key witness against him more effectively. A majority of the Court held that due process entitled the defendant to a remand for an *in camera* review of the file. Although the Court conceded that "the public interest in protecting this type of sensitive information is strong," it concluded that the interest did not "necessarily prevent[ ] disclosure in all circumstances." (*Ritchie*, 480 U.S. at 57, 94 L. Ed. 2d at 57, 107 S. Ct. at 1002.) Accordingly, the Court ordered that the case be remanded for the trial court to review the privileged file to determine whether it contained evidence favorable and material to the guilt of the defendant.

The file at issue in *Ritchie*, however, was not protected by an absolute statutory privilege, but one which contemplated disclosure of the privileged information if so directed under court order. The Court specifically declined to express an opinion on what the result would be in a case where the information sought by the defendant was protected by an absolute statutory privilege. (*Ritchie*, 480 U.S. at 57 n.14, 94 L. Ed. 2d 57 n.14, 107 S. Ct. at 1002 n.14.) There is no indication, however, that

the Court would find that even an absolute privilege would overcome a defendant's due process rights, at least to an *in camera* review, under the circumstances of the present case. In both *Nixon* and *Ritchie*, the Court found that privileges based on compelling interests—protection of sensitive information concerning top-level affairs of state and abused children—were insufficient to overcome the defendant's right to due process. The State interest in this case is no more compelling than the interests advanced in those cases.

Furthermore, without review of the records, the threshold questions which determine whether a defendant's due process rights have been violated—whether there is evidence in the file favorable to the defendant and material to his guilt or innocence—cannot be answered. As in *Ritchie*, "it is impossible to say whether any information in the *** records may be relevant to [the defendant's] claim of innocence, because neither the prosecution nor defense counsel has seen the information." (*Ritchie*, 480 U.S. at 57, 94 L. Ed. 2d at 57, 107 S. Ct. at 1002.) Therefore, like the defendant in *Ritchie*, defendant should at the very least be given the opportunity to have the trial court review *in camera* the records in question to determine whether they contain any favorable or material information which the government would be obligated under due process principles to turn over to the defendant.

The second constitutional right of the defendant which may be impinged in a criminal proceeding by a witness' invocation of a privilege against disclosure is the sixth amendment right of confrontation. This right guarantees a criminal defendant the right to confront the witnesses against him. An essential component of this right is the defendant's right to cross-examine the witness. (*Delaware v. Fensterer* (1985), 474 U.S. 15, 88 L. Ed. 2d 15, 106 S. Ct. 292 (*per curiam*); *Douglas v. Alabama*

(1965), 380 U.S. 415, 13 L. Ed. 2d 934, 85 S. Ct. 1074; *Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065.) The right to cross-examine includes the right to test the truth and reliability of a witness' testimony, and to call into question his motives, biases, and credibility. (*United States v. Abel* (1984), 469 U.S. 45, 83 L. Ed. 2d 450, 105 S. Ct. 465; *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531; *Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218; *Greene v. McElroy* (1959), 360 U.S. 474, 3 L. Ed. 2d 1377, 79 S. Ct. 1400.) Recognizing the critical function cross-examination serves in a criminal defense, the Supreme Court has "scrupulously guarded against 'restrictions imposed by law or by the trial court on the scope of cross-examination.' " (*Ritchie*, 480 U.S. at 66-67, 94 L. Ed. 2d at 63, 107 S. Ct. at 1007 (Brennan, J., dissenting), quoting *Delaware v. Fensterer* (1985), 474 U.S. 15, 88 L. Ed. 2d 15, 106 S. Ct. 292.) The confrontation clause does not guarantee, of course, that the defendant's cross-examination will be effective, but only that defendant will be given "an *opportunity* for effective cross-examination." (Emphasis in original.) *Fensterer*, 474 U.S. at 20, 88 L. Ed. 2d at 19, 106 S. Ct. at 295.

In *Ritchie* a majority of the Court could not agree on the effect of the confrontation clause on a defendant's right to pretrial discovery of privileged information concerning a government witness. A plurality of the Court thought that so long as a defendant is afforded full cross-examination of the witness at trial, the confrontation clause does not confer upon the defendant any rights to pretrial discovery to aid in that cross-examination. The view of Justices Powell and Brennan, however, was that unless the defendant is afforded pretrial discovery of relevant information pertaining to the witness, the guarantee of the opportunity for effective cross-ex-

amination found in the confrontation clause is rendered meaningless. Justice Powell felt that in some cases simply cross-examining the witness at trial, without the benefit of specific information gained through pretrial discovery which could be used for impeachment, would be a useless exercise. In fact, if the defense counsel continued merely cross-examining the witness at length in such a situation, "the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness," leaving the defendant in a worse position than if no cross-examination at all were available. *Ritchie*, 480 U.S. at 64, 94 L. Ed. 2d at 61-62, 107 S. Ct. at 1005 (Blackmun, J., concurring); see also *Ritchie*, 480 U.S. at 71, 94 L. Ed. 2d at 66, 107 S. Ct. at 1009 (Brennan, J., dissenting) ("The creation of a significant impediment to the conduct of cross-examination thus undercuts the protections of the Confrontation Clause, even if that impediment is not erected at the trial itself. *** [T]he foreclosure of access to prior statements of the testifying victim deprived the defendant of material crucial to the conduct of cross-examination").

Because the plurality's analysis of the confrontation clause issue in *Ritchie* does not constitute binding precedent, we must look to the Court's earlier cases on the clash between the confrontation clause and claims of privilege for guidance. This brings us to the well-known *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, in which the defendant sought to use a government witness' juvenile record to impeach the witness during cross-examination. The State contended that the State's interest in protecting the anonymity of juvenile offenders outweighed the defendant's interest in cross-examination. The Court rejected this argument, holding that the defendant's sixth amendment right to confrontation outweighed the State's interest in protect-

ing juvenile offenders, and that to make cross-examination of the witness effective "defense counsel should have been permitted to expose to the jury the facts [from the witness' privileged records] from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (*Davis*, 415 U.S. at 318, 39 L. Ed. 2d at 355, 94 S. Ct. at 1111.) Even though the State argued that disclosure of juveniles' records might cause "impairment of rehabilitative goals of juvenile correctional procedures" and juveniles might lose employment opportunities, the Court held that the right of confrontation is paramount. "Whatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record *** is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness. *** [The witness' right] must fall before the right of the petitioner to seek out the truth in the process of defending himself." (*Davis*, 415 U.S. at 319-20, 39 L. Ed. 2d at 355-56, 94 S. Ct. at 1112.) The Court concluded that "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Davis*, 415 U.S. at 320, 39 L. Ed. 2d at 356, 94 S. Ct. at 1112; see also *Salazar v. State* (Alaska 1976), 559 P.2d 66 (confrontation clause outweighs absolute marital privilege); *State v. Hembd* (1975), 305 Minn. 120, 232 N.W.2d 872 (confrontation rights outweigh physician-patient privilege).

In this case, as in *Davis*, no amount of cross-examination of the witness could have been effective without access to and use of the privileged records. Without specific information from the records, defendant could not expose any inconsistencies in the witness' story which may have been reflected in the version of the events she

had previously given to the rape-counseling service. Therefore, by denying defendant pretrial access to the record, the defendant was denied even the opportunity for effective cross-examination in violation of the sixth amendment. Also, it is significant that in this case, as in *Davis*, the witness protected by the privilege was the crucial witness in the trial, upon whose testimony the jury was likely to reach its verdict. Denial of the opportunity for effective cross-examination of this crucial witness unquestionably could have impeded the defendant's ability to present a defense.

The majority makes much of the fact that unlike *Davis*, where the defendant knew the contents of the privileged record prior to trial, in the present case the defendant cannot specifically state what information in the rape victim's counseling records would be useful in cross-examination: "The defendant's request was merely general *** and was not supported by any allegations that material useful to the defense of this case was likely to be found in the files ***. *** [Defendant's] request for an *in camera* inspection of the counseling records was merely general; he did not allege that information may exist in counseling files that would be subject to disclosure. *** [There was no] indication by the defendant that the victim's communications with the counselor would provide a source of impeachment ***. *** [D]efendant here has offered no reason to believe that the victim's counseling records would provide a source of impeaching material ***." (121 Ill. 2d at 347-50.) This approach locks the defendant into a perfect Catch-22 position: To gain access to the privileged records defendant must specifically allege what useful information may be contained in the records. However, defendant has no way of making these specific allegations until he has seen the contents of the records.

Defendant here has advanced as detailed and specific a theory of the case as he is capable of formulating without access to the records. He has explained his version of the facts and his theory as to why the victim's story differs from his, and has outlined exactly what type of information he seeks. Defendant seeks only "specific communications recounting the offense itself"—any statements made by the witness explaining her version of the events on the night in question—so that defendant may compare this version with her in-court testimony. Short of using powers of telepathy, defendant has no other method by which to gather more specific information about what might be in the counseling service's records and how this information could be useful to him. Defendant should not be penalized for not being as lucky as the defendant in *Davis*, who already knew the contents of the privileged records in issue.

Furthermore, the State interest in the asserted privilege which must be weighed against defendant's constitutional rights is no more compelling in this case than in *Davis*. In *Davis*, although the juvenile witness stood to suffer damage to his reputation and employment possibilities through the discovery of the protected juvenile records, the Court found this insufficient to overcome defendant's right to cross-examination. Here there is even less possibility than in *Davis* that the witness will be injured by disclosure of the privileged material. If the *in camera* procedure the defendant suggests were utilized, only the trial court would review the records, and upon review the court might find no information that it deemed necessary to disclose to the defendant. Even if the trial court were to find information that it felt should be disclosed to the defendant for use in cross-examination, it could pertain only to the facts of the incident, not to the witness' feelings or any part of the counseling process. Similarly, the cross-examination using such information

would be limited to impeachment of the witness based on inconsistencies between the facts related to the counseling service and later versions of those same facts. There can be no embarrassing cross-examination about the witness' past sexual history, as such cross-examination is prohibited by the Illinois rape shield law. Thus, the only likely embarrassment and damage to reputation the witness might suffer as a result of defendant's cross-examination based on the protected records is damage to the witness' reputation for veracity or bias. A State witness in a criminal trial should never be shielded from this type of damage, as such damage is the very essence of effective cross-examination. It has always been permissible and critical to the defense in a criminal trial to draw into question the witness' credibility.

In summary, when the defendant's rights to due process and confrontation are weighed against the State's interest in the absolute confidentiality of the witness' records, it is clear to me that the State's interest must yield. The statute enacted by the legislature, cloaking communications between rape victims and rape counselors in an absolute privilege, is unconstitutional. Numerous other courts have reached similar conclusions. (See, *e.g., In re Robert H.* (1986), 199 Conn. 693, 509 A.2d 475; *In re Pittsburgh Action Against Rape* (1981), 454 Pa. 15, 428 A.2d 126; *Advisory Opinion to the House of Representatives* (R.I. 1983), 469 A.2d 1161; *Commonwealth v. Two Juveniles* (1986), 397 Mass. 261, 491 N.E.2d 234; *People v. Pena* (1985), 127 Misc. 2d 1057, 487 N.Y.S. 935.) In addition, the Supreme Court has made clear that blanket privileges restricting the admission of relevant evidence, such as the one imposed in this case, are disfavored. See, *e.g., United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (rejecting absolute executive privilege); *Trammel v. United States* (1979), 445 U.S. 40,

63 L. Ed. 2d 186, 100 S. Ct. 906 (rejecting absolute marital or spousal immunity).

This is not to say, however, that defendant should have unlimited access to the counseling records. The rights of both the victim and the defendant can be adequately protected by recognition of a more limited privilege under which records could be reviewed for relevant evidence *in camera* by the trial court only. Such a procedure ensures continued confidentiality for the victim while protecting defendant's rights to due process and confrontation. The Supreme Court has repeatedly endorsed the use of *in camera* proceedings as a means of simultaneously protecting sensitive information and the defendant's rights. *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 57, 94 L. Ed. 2d 40, 57, 107 S. Ct. 989, 1001; *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090.

The majority rejects *in camera* review, contending that "to abrogate the privilege in this case would require its abrogation in every case." (121 Ill. 2d at 349.) This is undoubtedly true, as defendants would be sure to demand an *in camera* inspection of counseling records in every rape case, in the hope of obtaining information valuable in impeaching the witness. This is a small price to pay, however, to adequately protect the constitutional rights of a defendant whose liberty is at stake. Trial courts utilize *in camera* proceedings quite frequently, and any additional burden imposed on the trial courts is completely justified when viewed in light of the possible consequences to the defendant resulting from a rape conviction.

In addition, the concern that *in camera* review of the counseling records would negatively affect the therapeutic relationship between the victim and the counselor is not well founded. Neither the thoughts and feelings of the victim, nor the comments of the counselor, would be exposed as a result of an *in camera* review. The trial court would

be looking for, and disclosing to the defendant if necessary, only the facts of the alleged incident as communicated by the victim to the counselor. Such a minimal intrusion should have little, if any, chilling effect on the therapeutic relationship.

Finally, although the majority opinion upholds the absolute statutory privilege for rape-counseling communications under the facts of this case, it appears to concede that the privilege is really only a limited one. Emphasizing that defendant failed to allege specific proof that the privileged records would provide a source of impeachment and that the defendant had access to other statements made by the witness which might be used for impeachment, the majority concludes that "the privilege was [not] required to be breached *in this case.*" (Emphasis added.) (121 Ill. 2d at 349.) The majority's clear suggestion is that if, like the defendant in *Davis*, defendant "knew of specific information that could show bias or motive to fabricate on the part of the prosecution witness, and \*\*\* had no other means of achieving that end," defendant would be entitled to access to the privileged records. If, as the majority suggests, access to privileged records would be possible under these circumstances, then it should be equally available to all defendants. Otherwise the privilege would discriminate unfairly against defendants who are not fortunate enough to have access before trial to protected records.

For these reasons, I respectfully dissent. I believe that section 8—802.1 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 8—802.1) is unconstitutional and that defendant is entitled, at a minimum, to an *in camera* inspection by the trial court of the rape counseling service's records. If the *in camera* review revealed pertinent information, defendant would be entitled to a new trial.