■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NOEL MANNING, Appellant.—Judgment, Supreme Court, Bronx County (Ivan Warner, J.), rendered December 2, 1987, convicting defendant after a jury trial of sodomy in the first degree, robbery in the first degree, and kidnapping in the second degree and sentencing him, as a second violent felony offender, to three concurrent indeterminate terms of imprisonment of from 12 to 24 years on each conviction, unanimously affirmed.

Complainant testified that she was forcibly seized on the sidewalk and eventually escorted at knifepoint to a staircase landing near the roof of an apartment building, where she was forcibly sodomized, and then taken to the roof, where she was sodomized again, and then back to the rooftop landing, where she was raped. She testified that defendant used a condom during the rape, and discarded it on the rooftop afterward. She also testified that defendant then took her to a street corner and directed her to solicit "tricks" for him, that he took her house keys, and that he threatened to kill members of her family if she failed to do so.

Complainant escaped, called the police, and defendant was arrested on the street, not far from where he had left the complainant. A condom was found on the roof near where defendant allegedly discarded his, and the keys and a knife were recovered from defendant. A vitulo kit and the condom were vouchered, police tests established the presence of sperm in the condom, but no blood-type tests were conducted to determine how the semen might compare to defendant's blood type. This was the extent of the scientific evidence at trial.

Defendant, who was acquitted of the charge of rape in the first degree, testified at trial that he did not have sexual intercourse with the complainant, and did not use a condom, but that he did accompany her to the roof landing and had engaged in consensual sodomy in exchange for money. As such, identification was not in issue since defendant at least admits his presence in the general vicinity of the crime on the date alleged, although his testimony differs from complainant's as to certain particulars.

Prior to trial, defendant formally moved that he be provided with the "rape kit" and the condom so that he could conduct his own scientific tests. Defendant also submitted an expert's affidavit which stated that the physical evidence would not, as a result, be destroyed in terms of usefulness for future tests. His motion was denied. Defendant renewed his application at trial and, in a motion to set aside the verdict pursuant to CPL 330.30, relied on the People's failure to turn over the evidence.

At trial, the People made an offer of proof, out of the jury's presence, that the complainant had engaged in sexual intercourse with her husband earlier that evening. Accordingly, we are not persuaded that evidence of the presence of semen on the vaginal slide or the complainant's underwear would have been relevant, and, thus, it was not error to deny defendant access to the rape kit for such testing. Further, since complainant testified that defendant wore a condom during the rape, presumably preventing the escape of his semen, that the semen in her vaginal area was not defendant's would not have any bearing on complainant's credibility.

The only manner in which the condom would have been relevant is if scientific tests could establish blood type, one way or the other. Such testing would have reflected either on defendant's credibility, since he denied that sexual intercourse occurred, or on complainant's credibility, to the extent that she described defendant as wearing a condom during the rape, and a condom was recovered from the location described shortly thereafter.

While it might have been preferable to permit defendant to have conducted blood-type analysis of the semen found on the condom, we note the low probative value of such a test, since blood types ordinarily are shared by large groups of people. *(See, People v Mountain,* 66 NY2d 197.) We note also that the application for such testing was made 10 months after the incident, putting in issue the efficacy of any DNA testing, which defendant now stresses. Moreover, testing for DNA print identification was, at the time, highly experimental. Indeed, not until after the trial here did any New York court rule that DNA identification evidence of exclusion was admissible. *(See, People v Wesley,* 140 Misc 2d 306.) In fact, a request for such testing was never made before or during the trial. Further, this evidence itself was not central to the offenses charged, and, as already noted, goes only to complainant's credibility. If successfully tested, the condom would either have contained defendant's semen, which obviously would not

have helped him (he was acquitted of rape), or it would have contained someone else's semen. If the latter were shown, then obviously someone else had used a condom on the roof. We also take note of complainant's persuasive credibility, and the overwhelming nature of the evidence, albeit evidence which essentially pits complainant's testimony against defendant's. Thus, we conclude that to the extent that error occurred, it was harmless beyond a reasonable doubt. *(People v Crimmins,* 36 NY2d 230 [1975].)

Finally, since the People disclosed all the information which they had available, to the extent that they had conducted tests, we reject defendant's contention that the prosecutor concealed exculpatory evidence by failing to conduct blood-type tests. There was no exculpatory evidence to conceal. *(People v Yourdon,* 142 AD2d 998, *lv denied* 73 NY2d 791.)

We have examined defendant's other contentions and find them to be without merit. Concur—Murphy, P. J., Kupferman, Sullivan, Carro and Rosenberger, JJ.