OPINION OF THE COURT
Alan D. Marrus, J.
Upon an application by a defendant charged with rape, who seeks to conduct his own serological test of physical evidence recovered by the police, may a court compel the complainant to provide samples of her blood and saliva? Since the court has no constitutional or statutory power to issue such an *952 order and since, on the facts of this case serological test results could not exculpate the defendant, the application is denied.
The People allege that on August 10, 1990, the defendant choked the complainant, pushed her onto a bed, and forcibly inserted his penis into her vagina. Arrested while sleeping in the complainant’s bed, the defendant allegedly stated, "I didn’t take anything of value, just some pussy.” At the police precinct he is alleged to have said, "I guess I got caught with my hand in the cookie jar.” The defendant subsequently made a videotaped statement to an Assistant District Attorney admitting to "hanky-panky” with the complainant. Physical evidence recovered by the police which was submitted for serological analysis and which tested positive for the presence of sperm include a vaginal slide from the hospital where the complainant was examined, the complainant’s pants, a bed-sheet from the complainant’s bed and a cloth the defendant allegedly used to wipe himself.
The defense, pursuant to a prior court order, has secured this physical evidence and submitted it to another serologist for further tests in behalf of the defendant. The defendant now states that preliminary tests by his expert indicate the presence of type A matter in the substance taken from the complainant’s vagina, that his blood is type A but he is not a "secreter,” and, therefore, his semen would not contain type A matter. The defendant has applied to the court for an order directing the complainant to furnish samples of her blood and saliva, because "[i]f it turns out that neither Mr. Nelson nor the complainant are 'Type A secreters,’ it may be shown, to a reasonable degree of scientific certainty, that the semen found in the complainant’s vagina was not Mr. Nelson’s.”
The District Attorney opposes the application on two grounds. First, the District Attorney contends that this court has no constitutional or statutory power to order a complainant in a rape case to provide blood and saliva samples. Second, even assuming the court had such power, the intrusion on the complainant is not justified in this case. The prosecution appears to be correct on both points.
Where is the authority for a Judge presiding over a criminal case to compel a woman who claims she is the victim of a rape to provide samples of her blood and saliva to the man she has accused of committing the crime? None exists.
New York’s Criminal Procedure Law contains no provision *953 authorizing such a court order. CPL 240.20 (2) (v) specifically authorizes the court, upon a proper motion by the prosecutor, to compel the defendant to furnish blood samples and other body materials. There is no similar provision in the discovery statute regarding court orders upon defense motion.
CPL 240.20 (1) (h) does authorize a court, upon motion by the defense, to make available for testing "Anything required to be disclosed, prior to trial, to the defendant by the prosecutor, pursuant to the constitution of this state or of the United States.” But the defendant does not cite, nor is the court aware of, any constitutional provision authorizing such disclosure.
The defendant cites only a lower court opinion in People v Thomas (146 Misc 2d 327 [Sup Ct, Bronx County 1990]) where the court ordered the complainant to turn over a recent photograph so that the defendant could show it to witnesses so as to confirm or deny that the complainant was having an affair with him. Even assuming that our discovery statute empowers a lower court to issue such an order (a dubious proposition in this court’s view), the intrusion on the complainant there was nowhere near that which is being sought here — an invasion of her body to secure body fluids.
There is a substantial body of precedent regarding the compelled seizure of body materials and fluids from persons charged with crimes or suspected of crimes. (See, e.g., Schmerber v California, 384 US 757 [1966]; Breithaupt v Abram, 352 US 432 [1957]; Rochin v California, 342 US 165 [1952]; People v Moselle, 57 NY2d 97; Matter of Abe A., 56 NY2d 288 [1982].) There is no appellate precedent regarding the compelled seizure of body fluids from persons who report they are victims of crimes.
There is one lower court decision in New York (People v Trocchio, 107 Misc 2d 610), in which a Judge ordered reciprocal discovery of a complainant’s blood and saliva samples upon an application by the prosecution to obtain samples of the defendant’s blood and saliva. There the prosecution intended to compare the defendant’s blood with blood found on several articles of clothing and the court felt it was likely there would be proof that the blood on the clothing was not from the complainant. Citing the discovery statute and fundamental fairness, the court granted reciprocal "discovery” of the complainant’s blood and saliva as a condition for the prosecution’s "discovery” of defendant’s blood and saliva. Ob *954 viously this 11-year-old lower court decision cannot provide authorization for this court to grant the defendant’s application here. One lower court cannot derive its power to act solely from a decision of another lower court. The application here, coming as it does from the defense alone, moreover, is clearly distinguishable from the situation presented in Trocchio. Since a lower court is authorized in appropriate circumstances to compel a defendant to provide blood and saliva samples, implicit in that power is the right of the court to issue reasonable conditions for such an order.
Even were this court to presume it has the power to grant the defendant’s application, there appears to be no legitimate basis to issue such an extraordinary order given the facts of this case. Before a court may issue an order to obtain a blood sample from a suspect in a criminal case, there must be the following conditions: "(1) probable cause to believe the suspect has committed the crime, (2) a 'clear indication’ that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable.” (Matter of Abe A, supra, at 291.) Since the first requirement is inapposite and the third requirement can be readily satisfied, it is the second requirement spelled out in Abe A. which becomes critical. If a suspect in a criminal case cannot be compelled to submit a blood sample absent a "clear indication” that "relevant material evidence” will be found, there can certainly be no lesser standard for a complainant in a criminal case. Indeed, the United States Supreme Court has recognized that "[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained.” (Schmerber v California, supra, at 769-770.)
There is even precedent for denying a defendant’s application to be provided with the physical evidence seized by the police in a rape prosecution for the purpose of scientific testing by the defense. In People v Manning (156 AD2d 220 [1st Dept 1989]), the Appellate Division held that while it might have been preferable to allow such testing under the facts of that case, any error was harmless. The court there emphasized that "this evidence itself was not central to the offenses charged, and, as already noted, goes only to complainant’s credibility.” (People v Manning, supra, at 221.) Here the physical evidence has already been turned over pursuant to court order.
In People v Chambers (134 Misc 2d 688 [Sup Ct, NY County *955 1987]), the court denied disclosure to the defense of a personal diary kept by the victim before her death. The court there emphasized that the burden was on the defendant to show "that it is reasonably likely” that the item sought contains evidence or potential evidence. (People v Chambers, supra, at 690.)
While the requirement that a defendant clearly demonstrate the relevance and materiality of the sought after evidence would be present in any case, the necessity of making such a showing in a rape case is even more acute. Courts "cannot ignore the psychological and emotional trauma caused by this violent and heinous crime. The human suffering caused by rape not only far outlives the criminal prosecution thereunder, but often makes complainants reluctant to testify, thereby impeding effective prosecution.” (People v Pena, 127 Misc 2d 1057, 1061 [Sup Ct, Kings County 1985].)
Here the defense has simply failed to establish that there is a "clear indication” that samples of the complainant’s blood and saliva constitute "relevant material evidence.” The People do not intend to offer any evidence at trial that the sperm found in the complainant’s vagina has been determined through scientific testing to have come from the defendant. The fact that the defendant allegedly was arrested in the complainant’s bed and made a series of statements to the police and the prosecutor that he engaged in sexual acts with the complainant negates any issue of identity for trial.
Finally, it must be emphasized that the refusal of this court to issue such an order cannot and will not impede the defendant’s constitutional right to confront the People’s witnesses at trial. Should the People call their serologist as a witness, the defense may cross-examine fully regarding the availability of blood-type testing of the sperm recovered and the absence of any such testing by the People.
The defendant’s application for an order to compel the complainant to provide blood and saliva samples is, therefore, denied.